UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID YURMAN ENTERPRISES LLC, DAVID YURMAN IP LLC, AND YURMAN RETAIL NORTH AMERICA LLC, | ) ) ) ) |
| Plaintiffs, | ) C.A. No. _____ ) |
| v. | ) **Jury Trial Demanded** ) |
| MEJURI, INC. and MEJURI (US), INC., | ) ) |
| Defendants. | ) |

### DAVID YURMAN ENTERPRISES LLC, DAVID YURMAN IP LLC, AND YURMAN RETAIL NORTH AMERICA LLC'S COMPLAINT

Plaintiffs David Yurman Enterprises LLC, David Yurman IP LLC, and Yurman Retail North America LLC ("Yurman" or "Plaintiffs"), by their attorneys, hereby sue Defendants Mejuri, Inc. and Mejuri (US), Inc. (together, "Mejuri" or "Defendants") and allege upon knowledge as to their own acts and upon information and belief as to all other matters as follows:

### NATURE OF THE ACTION

1.      Founded in the 1980s by husband and wife artist duo David Yurman, a sculptor, and Sybil Yurman, a painter and ceramicist, Yurman is one of America's most iconic jewelry brands.  Yurman is famous for its instantly recognizable signature motif: twisted helix cable. Yurman's casual elegance embodies classic American style, and its designs have been featured on covers of magazines such as *Vogue* and worn by women such as former First Lady Michelle Obama, Barbra Streisand, Mary J. Blige, and Jennifer Aniston, to name only a few.

2.      Yurman has been at the forefront of female empowerment, starting from a mission at its founding: co-founded by Mrs. Yurman, around that time there "was a pivotal movement in the transformation of the jewelry industry, and for David Yurman, who led the way."  Paul Greenhalgh et al., DAVID YURMAN: CABLE (2017) ("Rizzoli Cable") at 80.  An "entirely new

category of jewelry and ultimately, a very different customer" emerged: "women who would purchase jewelry for themselves instead of traditionally receiving it as a gift." *Id.* Today, women make up fifty percent of Yurman's senior leadership committee and sixty-six percent of the workforce companywide.

3.      Over the more than forty years since its founding, Yurman's efforts designing, advertising, and selling products drawing from its signature motif have earned intellectual property rights, including trade dress protection.

4.      Nevertheless, companies like Defendants Mejuri have copied Yurman – from Yurman's jewelry designs down to the messaging of its founding and company ethos.

5.      Mejuri was founded by husband and wife duo Noura Sakkijha and Majed Masad, who started their careers in finance (Sakkijha as a process analyst for a major financial institution and Masad in investment banking).  As told by Masad, he and his wife "felt there was a big gap in the market and in the fine jewelry industry particularly" in the direct-to-consumer model that has seen success in other industries, and set out to "build a venture backed business."[1]  As told by Sakkijha, she – a "third generation jeweler"[2] – and her husband founded Mejuri for a different reason: they supposedly "saw a jewelry industry that was built for men gifting women and not women celebrating themselves."[3]  Mejuri also claims to be built on female empowerment: "From the beginning, our mission has been fine jewelry for every day, for our damn selves."[4]

6.      But instead of relying on their own designs, Mejuri has chosen to copy numerous of Yurman's distinctive designs – namely, designs for earrings, bracelets, and rings from multiple

---

[1] *Episode 3: Majed Masad, Cofounder*, *Mejuri*, THE SOUNDCOMMERCE PODCAST,
https://soundcommerce.com/podcast-mejuri (last visited Dec. 17, 2021).
[2] *Id.*
[3] MEJURI, *About Us*, https://mejuri.com/company/about-us (last visited Dec. 17, 2021).
[4] *Id.*

Yurman collections.  Mejuri has even worked with the same models and mimicked Yurman's images in advertising the copied jewelry.  Unfortunately for Mejuri's customers, Mejuri is unable or unwilling to match Yurman's product quality, selling products that quickly tarnish and are of lesser overall quality.  Mejuri's copying conduct is disappointing given that Mejuri reports to have received ample resources that could be used to make quality products with original design work.  For instance, Mejuri reported substantial fundraising activity, including recently raising over $20 million from sophisticated venture capital firms including NEA, Felix Capital, and Imaginary Ventures.[5]

7.      Unfortunately for the larger community, Mejuri's copying extends beyond Yurman. Mejuri appears to be a serial copyist, offering products and basing collections on designs from brands like Boucheron and LAGOS.

8.      Copying conduct like Mejuri's conduct here penalizes creative designers who have invested significant time, and talent, into product design.  Across the jewelry industry, sales of infringing and counterfeit goods have amounted to billions of dollars per year.[6]

9.      Mejuri's business practices contradict its claim to customers.  This is despite that Mejuri considers itself a "socially-responsible" company,[7] asserting, "[s]ince day one, it's been our mission to engage with the jewelry industry in a way that compliments [*sic*] our values and those of our customers."[8]

---

[5] *See, e.g.*, Rita Liao, *Mejuri raises $23M Series B to serve women buying jewelry for themselves*, TECHCRUNCH, https://techcrunch.com/2019/04/25/mejuri-23m-series-b/ (last visited Dec. 17, 2021).
[6] *See, e.g.*, *More than 60% of Counterfeit Fashion Purchases Were Knowingly Made by Consumers, Per New Study*, THE FASHION LAW, https://www.thefashionlaw.com/more-than-60-of-counterfeit-fashion-purchases-were-knowingly-made-by-consumers/ (last visited Dec. 17, 2021).
[7] *See, e.g.*, Hannah Crump, *Mejuri: Drafting a New Sustainability Roadmap*, BUSINESS OF FASHION, https://www.businessoffashion.com/articles/luxury/state-of-fashion-watches-jewellery-industry-report-mejuri-ceo-interview-noura-sakkijha/ (last visited Dec. 17, 2021); MEJURI, *Our Commitment to Sustainability*, https://mejuri.com/company/sustainability (last visited Dec. 17, 2021).
[8] *Id.*

10.     Mejuri claims that its designs are "[o]ften imitated, never duplicated."[9]   But Mejuri's designs are no more original than its slogan.  To the contrary, Mejuri imitates while others innovate.   Through this Action, Yurman seeks to put a stop to Mejuri's illegal practices and obtain compensation for Mejuri's violations.

## PARTIES

11.     Plaintiff David Yurman Enterprises LLC is organized and exists under the laws of the State of Delaware with its principal place of business located at 24 Vestry Street, New York, NY, United States, 10013.  David Yurman Enterprises LLC is engaged in the design, manufacture, distribution, and sale of fine and distinctive jewelry.

12.     Plaintiff David Yurman IP LLC is organized and exists under the laws of the State of Delaware with its principal place of business located at 24 Vestry Street, New York, NY, United States, 10013.   David Yurman IP LLC owns intellectual property created by and associated with Plaintiffs and the David Yurman brand.

13.     Plaintiff Yurman Retail North America LLC is organized and exists under the laws of the State of Delaware with its principal place of business located at 24 Vestry Street, New York, NY, United States, 10013.  Yurman Retail North America LLC is engaged in the sale of fine and distinctive jewelry.

14.     Defendant Mejuri, Inc. is an Ontario corporation with its principal place of business at 18C Mowat Avenue, Toronto, Ontario M6K 3E8.

15.     Defendant Mejuri (US), Inc. is a Delaware corporation with its principal place of business at 18C Mowat Avenue, Toronto, Ontario M6K 3E8.  Mejuri (US), Inc. has designated

---

[9] MEJURI, *Presenting the Icons*, https://mejuri.com/info/iconic-fine-jewelry (last visited Dec. 17, 2021).

Global Settlement Corp. as an agent for service of process, with an address at 1981 Marcus Avenue Suite E117, Lake Success, NY, United States, 11042.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over these claims under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks); and 28 U.S.C. § 1367 (supplemental jurisdiction).

17.     This Court has personal jurisdiction over Defendants, because, on information and belief, both Mejuri, Inc. and Mejuri (US), Inc. own and operate (either directly or through their agents) a store in this District, located at 43 Spring Street, New York, NY 10012; have placed infringing products into the stream of commerce with the knowledge or understanding that such products are sold in the state of New York, including in this District; and have caused, and are continuing to cause, injury to Yurman within this District through their tortious conduct.

18.     Venue is proper within this District under 28 U.S.C. §§ 1391(b) and (c) because each of Mejuri, Inc. and Mejuri (US), Inc. transacts business in this District, offers for sale in this District products that infringe and dilute Yurman's trade dress, and is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### A.      The Fame and Notoriety of David Yurman Jewelry Designs

19.     Over the past four decades, Yurman's jewelry products have been highly regarded by the public for their distinctive cable design, exceptional quality, precious stones, unique materials, and superior craftsmanship.

20.     Plaintiffs' jewelry products are marketed under the brand name David Yurman and are among the most celebrated jewelry products in the United States and worldwide.

21.     Beginning in or about 1980, David Yurman began designing, manufacturing, promoting, marketing, and selling a line of unique jewelry products that incorporate a cable design, together with other innovative and creative artistic elements.  The look of the cable design has been a significant success, bringing global recognition to Plaintiffs' business in the jewelry industry.  In the words of Mr. Yurman: "Cable is an enduring form – the river that runs through all of our designs."  Rizzoli Cable at 4.

22.     Around the time that Mr. and Mrs. Yurman founded their company, there "was a pivotal movement in the transformation of the jewelry industry, and for David Yurman, who led the way."  Rizzoli Cable at 80.  An "entirely new category of jewelry and ultimately, a very different customer" emerged: "women who would purchase jewelry for themselves instead of traditionally receiving it as a gift."  *Id.*

23.     Since the introduction of its cable designs, Yurman has spent enormous amounts of time, resources, and efforts to cultivate a reputation for producing jewelry of the finest design, materials, and craftsmanship.  These efforts have been largely successful, and today Yurman is one of the leaders in jewelry design and enjoys a devoted following from its customers, who refer to themselves as "Yurmanites."[10]

24.     Yurman jewelry products have become so highly acclaimed and widely known that they consistently attract unsolicited local and national media coverage.  For example, a recent article in *Town and Country* magazine highlighted that, "Forty years [after Mr. Yurman first created the cable design], Yurman is one of America's most well-known jewelry names, and his

---

[10] *See* Mary Logan Bikoff, *Jewelry designer David Yurman visits his Atlanta store*, ATLANTA MAGAZINE, (May 6, 2016), https://www.atlantamagazine.com/style/jewelry-designer-david-yurman-visits-atlanta-store/.

signature Cable design is instantly recognizable."[11]  The *New York Times* has repeatedly featured articles regarding Yurman and its jewelry, such as a 2017 article that included the following:  "'The cable bracelet didn't really look like anything else,' said Virginia Smith, the fashion market and accessories director at Vogue.  'It was very unique, and that has been one of the reasons [Yurman has] been successful for so long—this unwavering point of view.  To have that sort of clarity is very powerful.'"[12]  And *In Style* magazine wrote of Yurman's jewelry: "Stylish and unique, the intricate Cable motif would go on to define every David Yurman collection thereafter—and adorn the wrists of countless devotees of his timeless brand."[13]

25.    Yurman has also spent hundreds of millions of dollars in advertising its jewelry products.  Yurman's jewelry products are routinely advertised in nationally recognized magazines and newspapers such as *Vanity Fair*, *Vogue*, *Town and Country*, *The New York Times*, *InStyle*, and *The Los Angeles Times*, radio and billboard advertisements, public appearances at trade shows, and in-store appearances.  Indeed, Yurman's approach to jewelry display and sales is unique: "The company . . . differed significantly from the status quo.  Retailers had to sell the jewelry in collections.  There was a story and inspiration behind every collection that was shared with customers."  Rizzoli Cable at 99.

## B.    The Yurman Collections Copied by Mejuri

26.    The Yurman collections with products copied by Mejuri are the Pure Form® collection and Sculpted Cable collection.

---

[11] Jill Newman, *8 Things You Didn't Know About David Yurman's Iconic Cable Bracelet Design*, TOWN & COUNTRY MAGAZINE, (Oct. 8, 2021), https://www.townandcountrymag.com/style/jewelry-and-watches/a37887414/david-yurman-cable-bracelet-history/.
[12] Rachel Felder, *David Yurman Jewelry: 'This is an Art Project'*, NEW YORK TIMES, (Dec. 1, 2017), https://www.nytimes.com/2017/12/01/fashion/jewelry-david-yurman.html.
[13] *Celebrating 30 Years of David Yurman's Iconic Cable Bracelet*, INSTYLE, (Feb. 25, 2014), https://www.instyle.com/fashion/celebrating-30-years-david-yurmans-iconic-cable-bracelet.

27.     The Pure Form® collection launched in 2016, and is characterized by sculptural and smooth lines.  (*See, e.g.*, Rizzoli Cable at 122-123 (describing Pure Form® collection as "sleek and streamlined").)  As described on Yurman's website[14]:

THE PURE FORM® COLLECTION

This signature David Yurman collection celebrates metal's sculptural properties as well as its purity in form. A unique innovation in the carving of Pure Form pieces is that the Cable begins with a taut twist and then unwinds, widens and dissolves with elegant fluidity. By juxtaposing sculpted Cable with smooth forms, the designs create dynamic artistic statements that reconnect with David's roots in sculpture.

28.     Products from the Pure Form® collection are shown below[15]:



THE PURE FORM® COLLECTION

29.     The Sculpted Cable collection launched in 2003.  This collection is a carved form of Yurman's signature helix motif[16]:

---

[14] DAVID YURMAN, *The Pure Form® Collection*, https://www.davidyurman.com/products/womens/collections/pure-form-collection.html (last visited Dec. 17, 2021).
[15] *Id*.
[16] DAVID YURMAN, *Cable Classics Earrings*, https://www.davidyurman.com/products/womens/womens-earrings/cable-classics-earrings-e11493-ss.pdp.html?swatchCode=E11493%20SSZZZ (last visited Dec. 17, 2021).

> In Sculpted Cable, David Yurman transforms his signature design motif into a carved form. The effect is an entrancing wavelike pattern that retains the dimensional look of Cable's original helix.

30.     The carved helix motif characteristic of this collection can be seen in the following advertisement placed in the magazine *C California Style* in March 2012[17]:



31.     Since 2016, Yurman has spent well over $5 million and garnered over 230 million impressions advertising these collections.  These advertising efforts reflect print advertisements in local, regional, and national magazines and in local, regional, and national newspapers, out-of-home advertisements such as billboards and in-mall units, and digital advertisements such as social media and other online activations.  Beyond this, Yurman also advertises these collections through

---

[17] C MAGAZINE, *C California Style*, (Mar. 1, 2012), https://issuu.com/cdigital/docs/67.

direct emails and digital search ads, among other efforts.  A number of Yurman's wholesale partners match ad spend for certain advertisements, and have together spent more than $1 million advertising these collections over the last five years.

32.    For instance, Yurman's marketing spend was more than $1.5 million for the Pure Form® product launch alone.  This product launch included print advertising such as fashion magazines like *Vogue*, *Elle*, *W*, *Town & Country*, and *Elle Décor* (with a circulation of 3.7 million), regional magazines like *DuJour* and *Tampa Style Magazine* (with a circulation of 470,000), out-of-home impressions such as at the Triborough Bridge and outside of the LV-McCarren Airport (5.1 million impressions), and newspapers like the *New York Times* and the *Wall Street Journal* (with a circulation of 2.1 million).  Yurman also engaged in wholesale co-op advertising, such as through Neiman Marcus, Nordstrom, Saks Fifth Avenue, and others (with impressions ranging from 1.7 million to 20 million).

33.    Yurman's sales of the Pure Form® collection total over $35 million; and its sales of the Sculpted Cable collection total over $200 million.

## C.    **The Yurman Trade Dress**

34.    In connection with Yurman's general fame and notoriety, customers have come to recognize the unique and distinctive design of Yurman's jewelry pieces, and associate such pieces with Yurman and the David Yurman brand.  These pieces each consist of a combination of numerous nonfunctional elements, and have acquired distinctiveness and fame from uninterrupted promotion and sale.

Pure Form® Cable Bracelet

35.    One such piece is the Pure Form® Cable Bracelet, which is a part of Yurman's Pure Form® Collection and features a number of unique variations on the classic cable design for which Yurman is known.

36.     The Pure Form® Cable Bracelet product has a unique and distinctive shape and design such that it is recognized by jewelry consumers, consisting of a combination of numerous nonfunctional elements evident upon seeing the Pure Form® Cable Bracelet (the "Pure Form® Cable Bracelet Trade Dress"), including the following as described and depicted below:

- Sculpted cable motif in a twisted helix configuration;

- Deep, wide diagonal ridges wrapping around the bracelet;

- Rounded and smooth ridges;

- One portion slightly thickened or enlarged in diameter, with tapering on both sides of that portion; and

- Bold, voluminous design that is a stationary, singular piece.

 

37.     The Pure Form® Cable Bracelet Trade Dress, which is a composite of various distinct features, is nonfunctional in its entirety, visually distinctive, and is unique in the jewelry industry.

38.     The features of the Pure Form® Cable Bracelet Trade Dress, and the combination of those features as embodied by the jewelry product described above, do not provide any significant non-reputation advantages to Yurman or utilitarian advantages to the consumer, nor

11

does Yurman's exclusive use of the combination of features that comprise the Pure Form® Cable Bracelet Trade Dress put any competitor, including Mejuri, at a significant non-reputation-related disadvantage.  The Pure Form® Cable Bracelet Trade Dress is a combination of the specific features described above and reflects a series of artistic, arbitrary design choices that create a distinctive and unique commercial impression.  The features of the Pure Form® Cable Bracelet Trade Dress outlined above taken as a whole are particular to Yurman and are unique in the jewelry industry (except when they are copied by imposters like Mejuri) such that customers identify the Pure Form® Cable Bracelet Trade Dress and its combination of features with Yurman.  Put otherwise, the combination of features of the Pure Form® Cable Bracelet Trade Dress serves only to render Yurman's products which embody the Pure Form® Cable Bracelet Trade Dress as distinct and recognizable as goods originating from Yurman.

39.     The Pure Form® Cable Bracelet was launched in August 2016, and the Pure Form® Cable Bracelet Trade Dress was extensively and continuously in use at least since that point.  To date, sales of the Pure Form® Cable Bracelet have totaled over $6.7 million.

Pure Form® Stack Rings

40.     The Pure Form® Stack Rings product is also a part of Yurman's Pure Form® Collection.

41.     The Pure Form® Stack Rings product has a unique and distinctive shape and design such that it is recognized by jewelry consumers, consisting of a combination of numerous nonfunctional elements evident upon seeing the Pure Form® Stack Rings (the "Pure Form® Stack Rings Trade Dress"), including the following as described and depicted below:

- Two rings with a similar silhouette that allows for close stacking.

- One ring of the pair including:

     ○  Sculpted cable motif in a twisted helix configuration;

     ○  Deep, wide, diagonal ridges wrapping around the bracelet;

     ○  Rounded and smooth ridges;

     ○  Bold, voluminous design that is a stationary, singular piece; and

     ○  One portion thickened or enlarged in diameter, with tapering on both sides of that portion.

- One ring of the pair including:

     ○  Round and smooth edges;

     ○  Bold, voluminous design that is a stationary, singular piece; and

     ○  One portion thickened or enlarged in diameter, with tapering on both sides of that portion.

 

42.    The Pure Form® Stack Rings Trade Dress, which is a composite of various distinct features, is nonfunctional in its entirety, visually distinctive, and is unique in the jewelry industry.

43.    The features of the Pure Form® Stack Rings Trade Dress, and the combination of those features as embodied by the jewelry product described above, do not provide any significant non-reputation advantages to Yurman or utilitarian advantages to the consumer, nor does Yurman's exclusive use of the combination of features that comprise the Pure Form® Stack Rings Trade

Dress put any competitor, including Mejuri, at a significant non-reputation-related disadvantage. The Pure Form® Stack Rings Trade Dress is a combination of the specific features described above and reflects a series of artistic, arbitrary design choices that create a distinctive and unique commercial impression. The features of the Pure Form® Stack Rings Trade Dress outlined above taken as a whole are particular to Yurman and are unique in the jewelry industry (except when they are copied by imposters like Mejuri) such that customers identify the Pure Form® Stack Rings Trade Dress and its combination of features with Yurman. Put otherwise, the combination of features of the Pure Form® Stack Rings Trade Dress serves only to render Yurman's products which embody the Pure Form® Stack Rings Trade Dress as distinct and recognizable as goods originating from Yurman.

44. The Pure Form® Stack Rings product was launched in August 2016, and the Pure Form® Stack Rings Trade Dress was extensively and continuously in use at least since that point. Yurman has made sales of over $3.7 million for the Pure Form® Stack Rings to date.

Cable Classics Earrings

45. The Cable Classics Earrings, which are part of the Sculpted Cable collection, feature Yurman's signature cable motif.

46. The Cable Classics Earrings product has a unique and distinctive shape and design such that it is recognized by jewelry consumers, consisting of a combination of numerous nonfunctional elements evident upon seeing the Cable Classics Earrings (the "Cable Classics Earrings Trade Dress"), including the following as described and depicted below:

- Sculpted cable motif in a twisted helix configuration;

- Deep, wide, diagonal ridges wrapping around the earring;

- Curved, shrimp-like shape; and

14

- Bold, voluminous design, with each earring a stationary, singular piece.

 

47.     The Cable Classics Earrings Trade Dress, which is a composite of various distinct features, is nonfunctional in its entirety, visually distinctive, and is unique in the jewelry industry.

48.     The features of the Cable Classics Earrings Trade Dress, and the combination of those features as embodied by the jewelry product described above, do not provide any significant non-reputation advantages to Yurman or utilitarian advantages to the consumer, nor does Yurman's exclusive use of the combination of features that comprise the Cable Classics Earrings Trade Dress put any competitor, including Mejuri, at a significant non-reputation-related disadvantage.  The Cable Classics Earrings Trade Dress is a combination of the specific features described above and reflects a series of artistic, arbitrary design choices that create a distinctive and unique commercial impression.  The features of the Cable Classics Earrings Trade Dress outlined above taken as a whole are particular to Yurman and are unique in the jewelry industry (except when they are copied by imposters like Mejuri) such that customers identify the Cable Classics Earrings Trade Dress and its combination of features with Yurman.  Put otherwise, the combination of features of the Cable Classics Earrings Trade Dress serves only to render Yurman's products which embody the Cable Classics Earrings Trade Dress as distinct and recognizable as goods originating from Yurman.

49.     The Cable Classics Earrings product was launched in January 2013, and the Cable Classics Earrings Trade Dress was extensively and continuously in use at least since that point. The Cable Classics Earrings have enjoyed substantial commercial success, and to date Yurman's sales of the Cable Classics Earrings have totaled more than $2.3 million.

50.     The Pure Form® Cable Bracelet Trade Dress, Pure Form® Stack Rings Trade Dress, and Cable Classics Earrings Trade Dress collectively constitute the "Yurman Trade Dress."[18]

51.     The designs embodied by the Yurman Trade Dress are neither essential to the use or purpose of the jewelry, nor do they affect the cost or quality of the jewelry.  There are near-countless alternative designs for earrings, bracelets, and rings available that are equally feasible and cost-efficient to produce, none of which necessitates copying or imitating the Yurman Trade Dress.  Such alternative designs have been used by numerous other jewelry designers and manufacturers.

52.     The features of the Yurman Trade Dress, and the combination of those features as embodied by the jewelry pieces described above, do not provide any significant non-reputation advantages to Yurman or utilitarian advantages to the consumer, nor does Yurman's exclusive use of the combination of features that comprise the Yurman Trade Dress put any competitor, including Mejuri, at a significant non-reputation-related disadvantage.  The Yurman Trade Dress reflects a series of artistic, arbitrary design choices that create an overall look and feel that customers identify with Yurman.  Put otherwise, the combination of features of the Yurman Trade

---

[18] The Pure Form® Cable Bracelet product, the Pure Form® Stack Rings product, and the Cable Classics Earrings product are collectively referred to herein as the "Yurman Products."

Dress serves only to render Yurman's products which embody the Yurman Trade Dress as distinct and recognizable as goods originating from Yurman.

53.     The Yurman Trade Dress has achieved a high degree of consumer recognition and secondary meaning through Yurman's widespread use, sale, advertising, and promotion of the Pure Form® Cable Bracelet, Pure Form® Stack Rings, and Cable Classics Earrings, and as such, is distinctive and serves to identify Yurman as the source of jewelry embodying said trade dress.

54.     Yurman's products, including those embodying the Yurman Trade Dress, are sold throughout the United States, including direct-to-consumer by Yurman itself via retail locations and on the Yurman website.  Yurman also sells to consumers through third-party retail outlets, such as Saks Fifth Avenue, Nordstrom, Neiman Marcus, and Bloomingdale's.

55.     Yurman also extensively advertises the Yurman Trade Dress, including through the use of: (i) in-person events at retail locations like Saks Fifth Avenue, Nordstrom, and Bloomingdale's; (ii) print advertisements in national, regional, and local publications, including *Vogue, New York Magazine, The New York Times,* and *The Los Angeles Times*; (iii) billboard advertisements; (iv) digital advertising, Google product listings, social media posts, and influencer advertising; and (v) co-branded advertising activities with partners like Neiman Marcus and American Express.  Below are examples of Yurman's advertising of products embodying the Yurman Trade Dress:



**Bloomingdale's Catalogue, Sept. 2017**



**Neiman Marcus *The Book*, Sept. 2017**



**Newspaper half-page advertisement, Fall 2016[19]**

---

[19] This image was included in multiple markets nationwide with a circulation of approximately 2 million total copies.



***Accent Magazine*, Fall 2017**



**Billboard at Triborough Bridge, Sept. 6 – Nov. 1, 2021**

56.     Yurman has spent millions of dollars in connection with its marketing, advertising, and promotion of the products which embody the Yurman Trade Dress, in the United States.

57.     As noted above, Yurman has also made substantial sales of the products which embody the Yurman Trade Dress in the United States.

58.     Through Yurman's continued and widespread commercial use and success of the Yurman Trade Dress, as well as its advertising, promotion, and publicity, the consuming public has come to recognize the designs embodied by the Yurman Trade Dress, which is nonfunctional and distinctive, and has come to associate it with a single source, namely, Yurman.

59.     Given the fame and success of the Yurman Trade Dress, third parties have copied the Yurman Trade Dress in an effort to capitalize on the widespread consumer recognition and resulting secondary meaning acquired by Yurman and its products.

## C.     **Mejuri's Infringement of the Yurman Trade Dress**

60.     On information and belief, Mejuri is also engaged in the design (at least insofar as copying is considered design), distribution, marketing, and sale of jewelry.  Mejuri's retail stores are located nationwide, including within this judicial district.  Mejuri's products can also be purchased from various third-party retailers, as well as on Mejuri's official website, www.mejuri.com.

61.     Like Yurman, Mejuri was founded by a husband and wife duo.  Unlike Yurman, the founders' backgrounds are in finance.

62.     Like Yurman, Mejuri claims to be built on female empowerment.

63.     Like Yurman, Mejuri claims to offer fine jewelry that is accessible.  For example, Mejuri asserts that it "believe[s] luxury should be accessible, fun, and part of your everyday," and that its mission is to "have women embrace a daily dose of luxury."[20]  Likewise, Mejuri describes its brand as: "fine jewelry for my damn self."[21]

---

[20] MEJURI, *More Skin, More Gold*, https://mejuri.com/collection/288-more-skin-more-gold (last visited Dec. 17, 2021).
[21] MEJURI, *Our Commitment to Community*, https://mejuri.com/company/community (last visited Dec. 17, 2021).

64.   Beyond emulating Yurman's roots and ethos, Mejuri also has sold and sells several products that blatantly copy the Yurman Trade Dress.

65.   Mejuri's "Croissant Dôme Bracelet" and "Croissant Dôme Cuff Bracelet" products, launched around August 2019,[22] directly copy the design elements of the Pure Form® Cable Bracelet Trade Dress, as shown below in one example material:

| Yurman – Pure Form® Cable Bracelet | Mejuri – Croissant Dôme Bracelet |
| --- | --- |



---

[22] Justine Carreon, *Mejuri's New Jewelry Collection Is Inspired By Paris And Bread*, ELLE, (Aug. 16, 2019), https://www.elle.com/fashion/shopping/a28713793/mejuri-jewelry-collection/.

| Yurman – Pure Form® Cable Bracelet | Mejuri – Croissant Dôme Bracelet |
|---|---|
|  | |

| Yurman – Pure Form® Cable Bracelet | Mejuri – Croissant Dôme Cuff Bracelet |
|---|---|
|  | |

66.    The similarity between these two products is so striking that consumers seeing the Pure Form® Cable Bracelet and either the Croissant Dôme Bracelet or Croissant Dôme Cuff Bracelet, either at the point of purchase or thereafter, have been and will continue to be actually confused into thinking that the Mejuri product is related to Yurman.  Further, the Croissant Dôme Bracelet and Croissant Dôme Cuff Bracelet lack any differences that are memorable enough to dispel confusion on serial viewing.  Accordingly, ordinary consumers are likely to be confused as to the source, sponsorship, affiliation, or approval relating to the Mejuri products vis-à-vis Yurman and Yurman's Pure Form® Cable Bracelet.

67.    Further, Mejuri offers for sale a set of rings that directly copy the Pure Form® Stack Rings Trade Dress, as shown below in one example material:

| Yurman – Pure Form® Stack Rings | Mejuri – Thin Croissant Dôme Ring & Thin Dôme Ring |
|---|---|
|  | |

68.   Mejuri displays and advertises these rings as being paired together, in the same manner in which Yurman promotes and sells its Pure Form® Stack Rings:



69.     On information and belief, consumers have purchased these rings to pair together, recognizing the striking similarity to Yurman's Pure Form® Stack Rings – albeit at "a fraction of the price."  For example, as shown in the following video on YouTube[23]:



[23] *See* Keep Shining, *Fine Jewelry Collection: Cartier, Van Cleef and Arpels, Mejuri, Tiffany & Co., & Costco Diamonds*, YOUTUBE, (May 20, 2021), https://www.youtube.com/watch?v=yKWz222z0gY.





70.     Given these similarities in design, advertising, and presentation, on information and belief consumers have been and will continue to be confused, either at the point of purchase or thereafter, into believing that the Thin Croissant Dôme Ring and Thin Dôme Ring are related to

or associated with the Pure Form® Stack Rings.  Further, the Thin Croissant Dôme Ring and Thin Dôme Ring lack any differences that are memorable enough to dispel confusion on serial viewing. Accordingly, there is a likelihood that ordinary consumers will be confused as to the source, sponsorship, affiliation, or approval of these rings with Yurman and/or the Pure Form® Stack Rings.

71.     Additionally, Mejuri's "Croissant Dôme Hoops" earrings blatantly rip off the design elements that comprise the Cable Classics Earrings Trade Dress, as shown below in one example material:

| Yurman – Cable Classics Earrings | Mejuri – Croissant Dôme Hoops |
|---|---|



72.     On information and belief, the similarity between these two products is so striking that consumers seeing the Cable Classics Earrings and the Croissant Dôme Hoops products, either

at the point of purchase or thereafter, have been and will continue to be actually confused into thinking that the Mejuri product is related to Yurman.  Further, the Croissant Dôme Hoops lack any differences that are memorable enough to dispel confusion on serial viewing.  As such, ordinary consumers are likely to be confused as to the source, sponsorship, affiliation, or approval relating to the Croissant Dôme Hoops product vis-à-vis Yurman and Yurman's Cable Classics Earrings.

73.     In short, the Croissant Dôme Bracelet product, Croissant Dôme Cuff Bracelet product, Thin Croissant Dôme Ring product, Thin Dôme Ring product, and Croissant Dôme Hoops product (collectively, the "Infringing Products") have an overall appearance that is confusingly similar to and substantially the same as the Yurman Trade Dress.

74.     Yurman has not granted a license or any other form of permission to Mejuri with respect to any of its trade dress or other intellectual property.

75.     On information and belief, Mejuri, like the rest of the trade and relevant consuming public, was well aware of the Yurman Trade Dress, and of the goodwill represented and symbolized thereby, prior to offering any of the Infringing Products for sale.  The Infringing Products were first offered for sale well after the Yurman Products were launched.

76.     On information and belief, Mejuri is a competitor of Yurman and has infringed the Yurman Trade Dress in an effort to exploit Yurman's reputation in the market and the goodwill it has built in its brand.

77.     On information and belief, Mejuri adopted the Yurman Trade Dress in bad faith. That is evidenced by the striking similarity of the Infringing Products to the Yurman Trade Dress, as well as Mejuri's copycat advertising campaigns, discussed in more detail below.

78.     That is further evidenced by Mejuri's apparent business model as a serial copyist of designs from established brands.  Indeed, Mejuri's copying conduct extends beyond Yurman's collections to pieces that appear strikingly similar to products by companies like Boucheron and LAGOS (and for LAGOS, even copying the product name).  For example:

**Boucheron's Quatre® Ring**[24]     **Boucheron's Quatre® Earring**[25]





**Mejuri's Charlotte Ring**[26]     **Mejuri's Charlotte Earrings**[27]




---

[24] BOUCHERON, *Quatre Grosgrain Ring*, https://www.boucheron.com/us/quatre-grosgrain-ring-yellow-gold-grosgrain-jrg02720.html (last visited Dec. 17, 2021).
[25] BOUCHERON, *Quatre Grosgrain Single Clip Earring*, https://www.boucheron.com/us/quatre-grosgrain-single-clip-earring-yellow-gold-radiant-edition-jco01369.html (last visited Dec. 17, 2021).
[26] MEJURI, *Charlotte Ring*, https://mejuri.com/shop/products/charlotte-ring (last visited Dec. 17, 2021).
[27] MEJURI, *Charlotte Hoops*, https://mejuri.com/shop/products/charlotte-hoops (last visited Dec. 17, 2021).

**LAGOS Caviar® Gold Ring**[28]         **LAGOS Caviar® Gold Diamond Ring**[29]





**Mejuri Caviar Ring**[30]         **Mejuri Caviar Diamond Eternity Ring**[31]





79.    On information and belief, Mejuri's use of the Yurman Trade Dress allows it to freeride on Yurman's hard work, investment, and proprietary design work.

80.    On information and belief, Mejuri has sold its products in interstate commerce and has gained profits by virtue of its sales of the Infringing Products.

81.    On information and belief, consumers viewing the Infringing Products have and will continue to confuse them with the Yurman Products.

82.    On information and belief, the Infringing Products are, as compared to the Yurman Products and as perceived by consumers, of lesser quality.  For example, at least the Croissant Dôme Cuff Bracelet is offered in gold vermeil.  Mejuri describes gold vermeil on its website as

---

[28] LAGOS, *Caviar Gold Ring*, https://www.lagos.com/products/caviar-gold-03-10182 (last visited Dec. 17, 2021).
[29] LAGOS, *Caviar Gold Diamond Ring*, https://www.lagos.com/products/caviar-gold-02-10222 (last visited Dec. 17, 2021).
[30] MEJURI, *Caviar Ring*, https://mejuri.com/shop/products/caviar-ring (last visited Dec. 17, 2021).
[31] MEJURI, *Caviar Diamond Eternity Ring*, https://mejuri.com/shop/products/caviar-diamond-eternity-ring (last visited Dec. 17, 2021).

follows:  "Not to be confused with regular gold plating, our vermeil is a thick layer of 18k solid gold on sterling silver."[32]  In other words, while Yurman offers its Pure Form® Cable Bracelet in 18k solid gold, at least the Croissant Dôme Cuff Bracelet is offered in a cheaper base metal.  On information and belief, the inferior composition of this Infringing Product causes this Infringing Product to tarnish even without any wear and tear, as depicted below:



one of many spots visible on new product purchased from Mejuri's store in New York, New York in October 2021

**Croissant Dôme Cuff Bracelet**

83.    Indeed, consumers have repeatedly reported tarnishing of Mejuri products, including the Infringing Products:

---

[32] *See, e.g.*, MEJURI, *Croissant Dôme Cuff Bracelet*, https://mejuri.com/shop/products/croissant-dome-cuff-bracelet (last visited Dec. 17, 2021).

31



**Yelp Review**[33]



**Yelp Review**

---

[33]      *See* Mejuri New York, YELP, https://www.yelp.com/biz/mejuri-new-york (last visited Dec. 17, 2021), for this review and the following Yelp reviews.  Images of reviews from Yelp redacted to conceal identity.



**Yelp Review**



**Yelp Review**

84.     In addition, at least the Thin Croissant Dôme Ring, Thin Dôme Ring, Croissant Dôme Cuff Bracelet, and Croissant Dôme Hoops are hollowed-out in the interior of the products:



**Croissant Dôme Cuff Bracelet**



**Croissant Dôme Hoops**



**Thin Croissant Dôme Ring**



**Thin Dôme Ring**

85.     By contrast, the Yurman Products are not hollowed-out, and are heavier in weight. These Mejuri products are thus inferior in this respect as well.

86.     On information and belief, Mejuri's infringement has caused Yurman to suffer harm, and as such, Yurman is entitled to injunctive relief and damages.

**D.     Mejuri's Copycat Advertising Campaigns, Including for the Infringing Products**

87.     Apparently not satisfied with merely copying the Yurman Trade Dress, Mejuri has also taken steps to falsely associate itself with Yurman through its promotional messages, advertising campaigns and artwork, and partnerships.  These actions not only further mislead consumers into believing there is a connection between Yurman and Mejuri, but also misrepresent the nature and characteristics of Mejuri products, by falsely suggesting that Mejuri's products are

of the same quality as Yurman's (which they are not).  These actions harm not only Yurman, but also the consumers and Yurman's partners.

88.     For example, as set forth above, Mejuri has lifted both its founding messaging as well as its purported "ethos" concerning female empowerment and women buying jewelry for themselves directly from Yurman.

89.     Mejuri has also emphasized the Infringing Products as part of its offerings, including by creating a larger-than-life display in Mejuri's London storefront:



90.     Additionally, in the Fall of 2018, Yurman partnered with wellness and lifestyle company Goop to create the "Holiday Checklist: 10 Inarguably Great Gifts," which was featured on the Goop website throughout the 2018 holiday season.[34]

91.     As shown below, this Checklist prominently featured the David Yurman name and logo, and included Yurman jewelry as four of the ten inarguably great gifts:

---

[34] GOOP, *Holiday Checklist: 10 Inarguably Great Gifts*, https://goop.com/style/gift-guides/holiday-checklist-10-inarguably-great-gifts/ (last visited Dec. 17, 2021).



**Holiday Checklist:
10 Inarguably Great Gifts**



92.    In addition to this highly publicized partnership, various pieces of Yurman jewelry have been sold on and through the Goop website, including the Pure Form® Stack Rings.

93.    In March of this year, Mejuri announced that it too had entered into a partnership with Goop.[35]  Moreover, in connection with this collaboration, Mejuri specifically encouraged consumers to engage in the "art of the stack," and prominently featured pieces from this collection, including rings, stacked together:

---

[35] MEJURI, *Good Jewelry Collaboration*, https://mejuri.com/edit/goop-jewelry-collaboration/ (last visited Dec. 17, 2021).



94.     Indeed, over the course of the past year, Mejuri has placed an increased focus on "stacking" its pieces, including by featuring articles on its website stating "How to Get that Signature Mejuri Stack"[36] and "eight new ways with the Signature Stackers,"[37] and even prominently featuring "Signature Stackers" at the top of its website as "The Gifts of the Season":

---

[36] MEJURI, *How to Get That Signature Mejuri Stack*, https://mejuri.com/edit/how-to-layer-jewelry-diamonds-gold (last visited Dec. 17, 2021).
[37] MEJURI, *Meet Our Signature Stackers*, https://mejuri.com/edit/shop-stackable-real-gold-rings (last visited Dec. 17, 2021).

**The Gifts of the Season: <u>Signature Stackers</u>**

# MEJURI

95.    The problem, however, is that rather than being a "signature" of Mejuri, stacking has been closely associated with Yurman for many years, as evidenced by the following post from March 25, 2013 on Yurman's Instagram page[38]:



96.    In addition, Yurman launched its mainline Stax Collection in 2016 and one of Yurman's three "Signature High Jewelry Collections" is Stax, which features pieces that are

---

[38] David Yurman, INSTAGRAM, https://www.instagram.com/p/XSNjvEBadw/ (last visited Dec. 17, 2021).

designed to mimic the look and movement of multiple, stacked pieces of jewelry while maintaining a singular expression:



97.     Thus, Mejuri's recent focus on stacking, and in particular its repeated use of "signature" in connection with stacking, serves to further falsely associate Mejuri with Yurman.

98.     In one more particularly egregious example, Mejuri worked with supermodel Emily Didonato to promote its "stacking challenge" via its social media less than two weeks after Yurman featured Ms. Didonato on its own social media pages.

99.     On September 13, 2021, Yurman posted a selfie taken by Ms. Didonato using its official Twitter account, tagging Ms. Didonato's official Twitter account and highlighting several pieces of Yurman jewelry that Ms. Didonato was wearing:





100.    On September 24, 2021—just eleven days after Yurman's tweet featuring Ms.
Didonato—Mejuri posted on its official Instagram page an image of Ms. Didonato wearing Mejuri
jewelry pieces (and purportedly participating in a Mejuri "stacking challenge") which was similar
to the selfie featured by Yurman:





101.    On the same day, Mejuri posted a video featuring Ms. Didonato to its official YouTube page as well.[39]   On information and belief, Mejuri's repeated pattern of copying Yurman's advertising techniques, messages, and partnerships conveys to consumers the false message that Mejuri and Yurman are affiliated or related.

## COUNT I
## <u>INFRINGEMENT OF THE YURMAN TRADE DRESS</u>
### (15 U.S.C. § 1125(a))

102.    Yurman incorporates and re-alleges the allegations contained in Paragraphs 1 through 101 above as though fully set forth below.

103.    Yurman has ownership rights in the Yurman Trade Dress as described above.

104.    The Yurman Trade Dress as described above is unique, distinctive, nonfunctional, and has achieved substantial secondary meaning and goodwill in that it has come to be associated with a single source in the minds of consumers.

105.    The design of the Yurman Trade Dress is neither essential to its use or purpose nor does it affect the cost or quality of the jewelry which embodies the Yurman Trade Dress. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Yurman Trade Dress. The aforesaid combination of features provides no cost advantages to the manufacturer or utilitarian advantages to the consumer.  These features, in combination, serve only to render the Yurman Products distinct and recognizable as goods originating from Yurman.

106.    As such, the Yurman Trade Dress constitutes protectable trade dress pursuant to Section 43(a) of the Lanham Act.

---

[39] Mejuri, *Supermodel Emily DiDonato Styles 4 Jewelry Looks | Mejuri Stacking Challenge*, YOUTUBE, (Sept. 24, 2021), https://www.youtube.com/watch?v=uux8WSlMYpA&t=55s.

107.    On information and belief, Mejuri has marketed, offered for sale, and sold the Infringing Products to the identical group of consumers as the consumers for the Yurman Products via similar channels of trade as Yurman.

108.    The design and look of Mejuri's Infringing Products are confusingly similar to the Yurman Trade Dress, and incorporate the distinctive features of the Yurman Trade Dress. Therefore, the marketing and sale of the Infringing Products constitute the use in commerce of trade dress that is likely to cause confusion and mistake and to deceive consumers as to the source or origin of the Infringing Products or their affiliation, connection, or association with Yurman or the Yurman Products, or Yurman's sponsorship or approval of the Infringing Products.

109.    Mejuri's manufacture, marketing, and sale of the Infringing Products, which copy the Yurman Trade Dress, enable and have already enabled Mejuri to freeride on Yurman's reputation and goodwill built into the Yurman Trade Dress.

110.    As such, Mejuri's acts constitute trade dress infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

111.    On information and belief, Mejuri was aware of the Yurman Trade Dress at the time the Infringing Products were conceptualized, designed, manufactured, offered for sale and/or sold.  Accordingly, Mejuri's infringement as described above is deliberate, willful, and in bad faith, making this an exceptional case under 15 U.S.C. § 1117.  As such, Yurman is entitled to an award of its actual damages, Mejuri's profits, enhanced and exemplary damages, including treble its actual damages, an award of costs, destruction of the Infringing Products, and, as this is an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

112.    Mejuri's acts of infringement have caused both irreparable harm and monetary damage to Yurman, including but not limited to harm to each Plaintiff by virtue of damage to the

goodwill and reputation of Plaintiffs' business, and unless enjoined and restrained, will cause further irreparable harm, leaving Yurman with no adequate remedy at law.

**COUNT II**
**STATE LAW DILUTION**
(New York General Business Law § 360-l)

113.     Yurman repeats and re-alleges the allegations contained in Paragraphs 1 through 112 above as though fully set forth below.

114.     Yurman has ownership rights in the Yurman Trade Dress as described above.

115.     The Yurman Trade Dress described above has become and is now widely known and recognized among consumers, and accordingly is distinctive and is closely associated with Yurman and its products.

116.     The design and look of Mejuri's Infringing Products are confusingly and substantially similar to the Yurman Trade Dress, and incorporate the distinctive features of the Yurman Trade Dress.  Therefore, the marketing and sale of the Infringing Products constitute the use in commerce of trade dress that is likely to cause confusion and mistake and to deceive consumers as to the source or origin of the Infringing Products or their affiliation, connection, or association with Yurman or the Yurman Products, or Yurman's sponsorship or approval of the Infringing Products.

117.     Such conduct by Mejuri will blur the distinctive quality of the Yurman Trade Dress.

118.     Additionally, as the Infringing Products are of lesser quality than the Yurman Products, such conduct will tarnish the Yurman Trade Dress by linking it to sub-par products.

119.     Upon information and belief, Mejuri's activities were designed to dilute Yurman's extremely well-known trade dress, and to create confusion and mistake and to deceive consumers

into the false belief that Mejuri's products are associated with, affiliated with, sponsored by, endorsed by, or otherwise connected to Yurman and its products.

120.    Upon information and belief, Mejuri knew that Yurman would object to Mejuri's use of confusingly similar trade dress for the Infringing Products, and Mejuri acted unfairly under the circumstances in advertising, marketing, and selling confusingly similar products.

121.    Yurman has been injured as a result of such conduct, including but not limited to harm to each Plaintiff by virtue of damage to the goodwill and reputation of Plaintiffs' business, and will likely suffer additional injury if such conduct is not enjoined in the future.

122.    Mejuri's conduct constitutes dilution in violation of New York General Business Law § 360-l.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, Yurman respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to an Order:

1.    Finding that, by the acts complained of above: (i) Mejuri has infringed the Yurman Trade Dress in violation of 15 U.S.C. § 1125(a), and that such infringement was willful; and (ii) that Mejuri diluted the Yurman Trade Dress, and that such conduct was willful;

2.    Entering a permanent injunction enjoining and restraining Mejuri, its agents, servants, officers, directors, employees, affiliates, attorneys, and all those acting in privity, active concert, or participation with any of them, and their parents, subsidiaries, divisions, successors, and assigns who receive actual notice of the order and judgment by personal service or otherwise, from making, using, and selling any product in violation of the Yurman Trade Dress, and from advertising or marketing products that violate the Yurman Trade Dress;

3.      Awarding Yurman all actual damages, direct damages, indirect damages, consequential damages (including lost profits), special damages, costs, fees, and expenses incurred by reason of Mejuri's wrongful acts;

4.      Awarding Yurman treble damages sustained as a result of Mejuri's willful and unlawful conduct, pursuant to 15 U.S.C. § 1117(a);

5.      Ordering an accounting by Mejuri to Yurman for any and all profits derived as a result of marketing, promoting, or selling any goods that are confusingly similar to the Yurman Trade Dress;

6.      Ordering Mejuri to melt down and recycle any remaining inventory of the Infringing Products and take down and destroy any and all advertising and promotional materials, displays, marketing materials, web pages, and all other data or things relating to the Infringing Products in compliance with 15 U.S.C. § 1118;

7.      Awarding Yurman its actual costs and attorneys' fees incurred in bringing and defending this action pursuant to 15 U.S.C. § 1117(a);

8.      Awarding Yurman pre-judgment and post-judgment interest on each and every monetary award to Yurman; and

9.      Granting such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury as to all issues so triable.

Dated: December 17, 2021
      New York, New York

Respectfully submitted,


/s/ *Leslie A. Demers*
Leslie A. Demers

John M. Neukom  (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
525 University Avenue
Palo Alto, California 94301
Tel.: (650) 470-4500
Fax: (650) 470-4570
john.neukom@skadden.com

Leslie A. Demers
David M. Lamb
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
One Manhattan West
New York, New York 10001
Tel.: (212) 735-3000
Fax: (212) 735-2000
leslie.demers@skadden.com
david.lamb@skadden.com

*Attorneys for Plaintiffs David Yurman*
*Enterprises LLC, David Yurman IP LLC,*
*and Yurman Retail North America LLC*