## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DAVID YURMAN ENTERPRISES LLC,
DAVID YURMAN IP LLC, AND YURMAN
RETAIL NORTH AMERICA LLC,

     Plaintiffs,

  v.

MEJURI INC. and MEJURI (US), INC.,

     Defendants & Counterclaim-Plaintiffs.

C.A. No. 1:21-cv-10821-RA

## MEJURI INC. AND MEJURI (US), INC.'S
## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendants/Counterclaim-Plaintiffs Mejuri Inc. and Mejuri (US), Inc. (collectively,
"Defendants" or "Mejuri") by and through their undersigned attorneys, hereby state their Answer,
Affirmative defenses, and Counterclaims in response to the Complaint (Dkt. 1; "the Complaint")
of Plaintiff/Counterclaim-Defendants David Yurman Enterprises LLC, David Yurman IP LLC,
and Yurman Retail North America LLC (collectively "Plaintiffs" or "Yurman").

### MEJURI'S COUNTERCLAIMS

1.        The claims made by Yurman in its Complaint are without merit and
fundamentally at odds with what Mejuri stands for and who they are as a company.  Mejuri is an
innovative, modern jewelry brand that has made a name for itself by flipping the narrative that fine
jewelry is something that must be earned or gifted—instead, Mejuri believes in women buying
jewelry for themselves.  Mejuri strives for a culture that supports creators, prioritizes transparency,
and empowers women to proudly invest in themselves.  Founded in 2015 with the goal of
revolutionizing the way jewelry is made and sold, Mejuri has distinguished itself from established

jewelry brands by eliminating traditional industry markups through its direct-to-consumer model—allowing it to make high-quality fine jewelry affordable—and by positioning jewelry in a new way:  as an everyday luxury that women can purchase for themselves.  Mejuri's intricately designed, wearable and timeless pieces each have their own narrative and are designed to tell stories about style and the women around them.

2.      Yurman's Complaint is not a legitimate attempt to protect its intellectual property but is instead an effort to bully and stifle an emerging competitor by claiming a monopoly on classic jewelry designs that have been used for centuries— designs that are ubiquitous in the jewelry industry today.  *See* ¶¶ 36–37, 43, 50.   Indeed, the Complaint is replete with unsubstantiated allegations and unnecessary personal attacks on Mejuri and its founders that have nothing to do with intellectual property or Yurman's alleged concerns.  When stripped of its rhetoric and ad hominem attacks, Yurman's Complaint is revealed for what it is—an improper attempt to suppress an innovative competitor and to claim ownership of well-known, common motifs—like twist designs—that have been used in jewelry since at least the Roman Empire.  *See* ¶ 37.

3.      Yurman's Complaint alleges a likelihood of confusion between Mejuri's independently developed designs and Yurman's products without ever acknowledging that twist designs have been used for centuries, that Mejuri and Yurman compete in different segments of the jewelry market, and that Mejuri products and Yurman products are never sold in the same stores.  Yurman also ignores the dozens of other jewelry brands—including brands more well-known than Mejuri—that currently offer twist designs similar to Mejuri's.  *See* ¶¶ 36, 43, 50. Yurman apparently has taken no action against these brands, and instead has chosen to target

Mejuri by bringing an anti-competitive attack on a smaller, but rapidly growing, challenger that is modernizing a traditional industry.

4.          Mejuri did not copy Yurman's designs—Mejuri's products are independently designed and developed.  *See* ¶¶ 23–26.  And Yurman's alleged concerns about infringement ring hollow given the facts.  The Mejuri designs that Yurman accuses of infringement had been on the market for two years before this lawsuit was filed but not once did Yurman raise its purported concerns with Mejuri.  If Yurman really believed that Mejuri was copying its designs, it could have contacted Mejuri before filing this lawsuit to inform Mejuri of its alleged trade dress rights.  Yurman could have sent a letter to Mejuri identifying its purported concerns.  Or it could have simply picked up the phone to initiate a discussion with Mejuri.  Yurman did none of these things.  Instead, it filed this meritless lawsuit and issued a press release without the courtesy even of providing Mejuri notice.[1]

5.          Yurman's Complaint falsely alleges that Mejuri's ethos, marketing, and advertising creates an association with Yurman.  Mejuri has never sought to associate itself with Yurman.  In fact, Mejuri's central mission is to differentiate itself from other companies in the jewelry industry.  Consequently, Yurman's suggestion that Mejuri has sought to associate itself with Yurman lacks merit.  Yurman goes so far as to claim that Mejuri has copied its company ethos by empowering women to purchase jewelry for themselves.  It attempts to claim a dedication to women's empowerment as its own, rather than celebrating collective efforts in the marketplace to uplift and celebrate women.

---

[1] Misty White Sidell, *David Yurman Files Lawsuit Against Mejuri*, WWD (Dec. 17, 2021), https://wwd.com/accessories-news/jewelry/david-yurman-files-lawsuit-against-mejuri-alleging-serial-copying-1235020601/#!.

– 3 –

6.      Yurman even complains that Mejuri used model Emily Didonato to promote its jewelry after "Yurman posted a selfie taken by Ms. Didonato."[2]  But a minimal amount of diligence by Yurman would have revealed that this post was far from what Yurman describes as an "egregious example" of copying.  In fact, Ms. Didonato had been promoting Mejuri on her social media pages months before Yurman re-posted her "selfie."  *See* ¶ 102.

7.      Simply put, Yurman's lawsuit is an attempt to bully an emerging competitor, monopolize common design motifs, and prevent competition from one of the fastest growing fine jewelry brands in a rapidly evolving industry.

8.      Accordingly, Mejuri seeks a declaration that (1) the alleged trade dress asserted in Yurman's Complaint ("the Alleged Trade Dress") is not protectable under federal or state law, (2) Mejuri does not infringe the Alleged Trade Dress, and (3) Mejuri does not dilute the Alleged Trade Dress in violation of New York General Business Law § 360-l.

## THE PARTIES

9.      Counterclaim-Plaintiff Mejuri Inc. is an Ontario corporation with its principal place of business at 18C Mowat Avenue, Toronto, Ontario, Canada, M6K 3E8.

10.      Counterclaim-Plaintiff Mejuri (US), Inc. is a Delaware corporation with its principal place of business at 18C Mowat Avenue, Toronto, Ontario, Canada, M6K 3E8.

11.      Upon information and belief, Counterclaim-Defendant David Yurman Enterprises LLC is organized and exists under the laws of the State of Delaware with its principal place of business located at 24 Vestry Street, New York, NY, United States 10013.

---

[2] Compl. ¶ 99

12.     Upon information and belief, Counterclaim-Defendant David Yurman IP LLC is organized and exists under the laws of the State of Delaware with its principal place of business located at 24 Vestry Street, New York, NY, United States, 10013.

13.     Upon information and belief, Counterclaim-Defendant Yurman Retail North America LLC is organized and exists under the laws of the State of Delaware with its principal place of business located at 24 Vestry Street, New York, NY United States, 10013.

## JURISDICTION

14.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks); 28 U.S.C. § 2201(a) (declaratory judgment); and 28 U.S.C. § 1367 (supplemental jurisdiction).

15.     This Court has personal jurisdiction over Plaintiffs because, *inter alia*, Plaintiffs are residents of New York and carry on continuous and systematic business within New York and because Plaintiffs have submitted to the jurisdiction of this Court by initiating this action.

16.     Declaratory relief is proper under the Declaratory Judgment Act, 28 U.S.C. § § 2201 and 2202, and Federal Rule of Civil Procedure 57.

## VENUE

17.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391, and because Plaintiffs chose to initiate an action in this forum.

## FACTUAL BACKGROUND

### A.  Mejuri's Founding and Mission

18.     Mejuri was co-founded in 2015 by Noura Sakkijha and Majed Masad with the goal of removing exclusivity from fine jewelry and making it more accessible for self-purchase without the high markup prices set by department stores selling conventional brands.  Recognizing

the potential for a direct-to-consumer model that had achieved success in other industries, Ms. Sakkijha and Mr. Masad set out to build a brand that was committed to "making fine jewelry that's high quality but also accessible for everyday [wear]." [3]

19.    Ms. Sakkijha and Mr. Masad founded Mejuri because they "saw a jewelry industry that was built for men gifting women and not women celebrating themselves."[4]  They set out to flip the narrative that "jewelry is something that has to be earned or gifted."[5]  Mejuri's mission from its inception has been to empower women to make their own buying decisions and promote "jewelry as an expression of self:  that it can mean whatever you want; that you can wear it when you want, buy it when you want, gift it, celebrate with it, reward yourself with it and keep it forever."[6]  As Ms. Sakkijha has explained, "the truest expression of Mejuri is mutual uplift: all of us supporting each other, and you, our community, feeling empowered to invest in yourself and, in turn, the community around you."[7]

20.    Mejuri is committed to providing fine jewelry at fair prices.  Mejuri's expert jewelers "use the highest quality materials from precious metals – from certified recycled gold and 18k gold vermeil, to ethically sourced diamonds and AAA-grade gemstones."[8]  Mejuri also sources its pieces from manufacturers that are leading innovators, ethically-minded, and serve many other well-known jewelry companies around the globe.  Mejuri stands firmly by the quality of its pieces, and "[e]ach and every one comes with a two-year warranty that guarantees that [Mejuri will] take

---

[3] *See* Mara Santilli, *Meet the CEO Behind Mejuri, the Fine Jewelry Brand Millennials Are Obsessed With*, BRIT + CO (Mar. 12, 2019), https://www.brit.co/mejuri-fine-jewelry-ceo-noura-sakkijha-interview/.
[4] MEJURI, *Our Mission*, https://mejuri.com/company/about-us (last visited Mar. 3, 2022).
[5] *See* Mara Santilli, *Meet the CEO Behind Mejuri, the Fine Jewelry Brand Millennials Are Obsessed With*, BRIT + CO (Mar. 12, 2019), https://www.brit.co/mejuri-fine-jewelry-ceo-noura-sakkijha-interview/.
[6] *See* Karin Eldor, *Mejuri: A Masterclass In Disrupting The Jewelry Industry, On A Global Scale*, FORBES (May 8, 2020), https://www.forbes.com/sites/karineldor/2020/05/08/mejuri-a-masterclass-in-disrupting-the-jewelry-industry-on-a-global-scale/?sh=6e53904e2c59; MEJURI, *Our Mission*, https://mejuri.com/company/about-us (last visited Mar. 3, 2022).
[7] MEJURI, *Our Mission*, https://mejuri.com/company/about-us (last visited Mar. 3, 2022).
[8] MEJURI, *Fair Pricing*, https://mejuri.com/company/fair-pricing (last visited Mar. 3, 2022).

care of your piece should any damage to the metal or workmanship occur."[9]  Mejuri makes its high quality jewelry accessible to consumers by bypassing the traditional channels through which jewelry has long been marketed.  Instead, Mejuri "work[s] directly with the best jewelers around the world, remove[s] the middlemen and sell[s] directly to [consumers]."[10]  As *Business Insider* noted, "Mejuri prices are remarkably affordable relative to the rest of the industry," which makes Mejuri products "accessible for a millennial woman with some expendable income."[11]  Mejuri's dedication to accessibility and quality ensures that its consumers "can wear fine jewelry every day, not just on special occasions."[12]

21.     Mejuri's dedication to mutual uplift and empowerment extends beyond making fine jewelry affordable.  Although Yurman's Complaint suggests otherwise, Mejuri's dedication to female empowerment has been central to its approach and strategy since its founding. In June 2020, Mejuri established its Empowerment Fund to support women "with the tools to empower themselves."[13]  Since then, 37 women and non-binary people have received scholarships from the Empowerment Fund.[14]  Mejuri is also partnering with the Jeannette Rankin Foundation to provide additional scholarships for low-income women and non-binary people.

22.     Mejuri's unique mission, timeless designs, and quality craftsmanship have led to rapid and enviable success.  Since its founding, Mejuri has sold more than two million pieces, with 40% of its revenue coming from existing customers.  The company has grown to more than 440 employees, with retail locations in Toronto, Vancouver, Austin, Boston, San Francisco, New

---

[9] MEJURI, *Fair Pricing*, https://mejuri.com/company/fair-pricing (last visited Mar. 3, 2022).
[10] *Id.*
[11] Mara Leighton, *Popular jewelry startup Mejuri is one of the most affordable places to buy everyday pieces, from solid gold hoops to stacking rings*, BUSINESS INSIDER (Apr. 1, 2021), https://www.insider.com/guides/style/mejuri-review-affordable-fine-gold-jewelry
[12] MEJURI, *Fair Pricing*, https://mejuri.com/company/fair-pricing (last visited Mar. 3, 2022).
[13] MEJURI, *Community*, https://mejuri.com/company/community (last visited Mar. 3, 2022).
[14] *Id.*

York City, Los Angeles, and London.  Mejuri has received significant acclaim in publications such as *Elle, Harper's Bazaar, Business Insider, Fast Company, Vogue, WWD*, and *Forbes* to name a few.[15]  As explained in *Forbes*, "[t]he magic that Mejuri created is a movement, one where women are self-gifting (which is inspired by the fact that women are making their own buying decisions and fueled by female empowerment) and one where fine jewelry is for every day, not for occasions."[16]

### B.  Mejuri's Unique and Innovative Designs

23.     Mejuri's innovative philosophy is borne out in its jewelry designs.  Mejuri's design team is led by Chief Creative Officer Justine Lançon, a former art director for brand design agencies that helped build identities for well-known brands like Lacoste, Veuve Cliquot, and Galeries Lafayette.  According to Ms. Lançon, each Mejuri piece is designed to "tell stories about style and the women around us…[w]hen designing fine jewelry, each tiny detail counts – it's the subtle differences that create wearable, timeless pieces."[17]  Mejuri's designs also find inspiration

---

[15] *See, e.g.,* Nerisha Penrose & Justine Carreon, *35 Jewelry Brands to Bookmark on Instagram*, ELLE, (July 15, 2021) https://www.elle.com/fashion/shopping/g31157773/affordable-jewelry-brands/; Mara Leighton, *Popular jewelry startup Mejuri is one of the most affordable places to buy everyday pieces, from solid gold hoops to stacking rings*, BUSINESS INSIDER (Apr. 1, 2021), https://www.insider.com/guides/style/mejuri-review-affordable-fine-gold-jewelry; Elizabeth Segran, *Mejuri Empowers Women to Buy Diamonds for Themselves*, FAST COMPANY, (Apr. 6, 2017) https://www.fastcompany.com/4034106/mejuri-empowers-women-to-buy-diamonds-for-themselves; Misty White Sidell, *Mejuri Reaches 2 Million Pieces Sold, Announces Stores and Sustainability Targets*, WWD, (Sept. 3, 2021) https://wwd.com/accessories-news/jewelry/mejuri-reaches-2-million-pieces-sold-announces-stores-and-sustainability-targets-1234908356/; Willow Lindley, *Feels Like a Steal: This Classic Cuff Will Stand the Test of Time*, VOGUE, (Mar. 6, 2020) https://www.vogue.com/article/feels-like-a-steal-mejuri-bracelet; Karin Eldor, *Mejuri: A Masterclass In Disrupting The Jewelry Industry, On A Global Scale*, FORBES, (May 8, 2020) https://www.forbes.com/sites/karineldor/2020/05/08/mejuri-a-masterclass-in-disrupting-the-jewelry-industry-on-a-global-scale/?sh=6e53904e2c59.
[16] Karin Eldor, *Mejuri: A Masterclass In Disrupting The Jewelry Industry, On A Global Scale*, FORBES, (May 8, 2020) https://www.forbes.com/sites/karineldor/2020/05/08/mejuri-a-masterclass-in-disrupting-the-jewelry-industry-on-a-global-scale/?sh=6e53904e2c59.
[17] Haley Dach, *Meet Mejuri Creative Director Justine Lançon*, S MAGAZINE (Sept. 10, 2019), https://smagazineofficial.com/fashion/meet-mejuri-creative-director-justine-lancon-091017120.

from its loyal customer base, and the company "incorporate[s] feedback from [the] community when it comes to iterating, and design pieces that complement the existing editions."[18]

24.      Mejuri has an elaborate design process that starts from unique conception and ends with innovative execution.  Mejuri's products are designed in-house and undergo a robust, team-based testing and experimentation process.  The evolution of Mejuri's designs can be traced from inspired concepts, to design sketches and workshops, to testing creations of the physical product, as depicted for the Croissant Dôme Collection below.



**Inspiration for Croissant Collection**

[18] *Id.*



**Design Iterations to Achieve the "Baked" Croissant Look**



**Achieving the Baked Croissant Design**

25.     This innovative design process led to Mejuri's Croissant Dôme Collection. The Croissant Dôme Collection is a variation of Mejuri's Dôme collection, which as shown below, was "[i]nspired by sculpture and the idea of wearable art" and consists of carefully designed pieces with "a sleek style" and "a bold rounded vault."[19]



26.     The Croissant Dôme collection was "inspired by Paris' most beloved star – the croissant."[20]  As Ms. Lançon explained in September 2019 "[w]hen we were looking for design inspiration, images of croissants and Paris kept appearing.  We also kept referring to 'baking' the designs to make the pattern look more exaggerated, so the designs naturally became perfect for French style—timeless, subtle and bold, but still casual and fun."[21]  This is consistent with Mejuri's organic design process, described above, resulting in fresh, thoughtful jewelry designs that resonate with consumers and their stories.

---

[19] MEJURI, *The Dôme Collection*, https://mejuri.com/collections/dome-collection (last visited Mar. 3, 2022).
[20] MEJURI, *The Croissant*, https://mejuri.com/collections/croissant-family (last visited Mar. 3, 2022).
[21] Haley Dach, *Meet Mejuri Creative Director Justine Lançon*, S Magazine (Sept. 10, 2019), https://smagazineofficial.com/fashion/meet-mejuri-creative-director-justine-lancon-091017120.



**Mejuri Croissant Launch**

27.       The Croissant Dôme design, shown below, is "a classic with a twist" and combines a tapered shape and volume with a sculptural twist and pattern in subtle graduation from the center of the piece.[22]



---

[22] MEJURI, *The Croissant*, https://mejuri.com/collections/croissant-family (last visited Mar. 3, 2022).

28.     The Croissant Dôme Collection was first launched in August 2019—over two years before Yurman filed its lawsuit—and has achieved widespread success and consumer praise. Some of the many positive customer reviews for the Croissant Dôme Cuff Bracelet, Thin Croissant Dôme Ring, and Croissant Dôme Hoops respectively can be seen below.[23]

### Croissant Dôme Cuff Bracelet



### Thin Croissant Dôme Ring



### Large Croissant Dôme Hoops



29.     In recognition of these unique designs, Mejuri has sought to register its designs for each of the Croissant Dôme Cuff Bracelet, Croissant Dôme Ring, and Croissant Dôme

---

[23] MEJURI, *Croissant Dôme Cuff Bracelet*, https://mejuri.com/shop/products/croissant-dome-cuff-bracelet (last visited Mar. 3, 2022); MEJURI *Thin Croissant Dôme Ring*, https://mejuri.com/shop/products/thin-croissant-dome-ring (last visited Mar. 3, 2022); MEJURI, *Large Croissant Dôme Hoops*, https://mejuri.com/shop/products/large-croissant-dome-hoops (last visited Mar. 3, 2022).

Hoops in Canada, the United States, United Kingdom, and the European Union. For example, Mejuri has Registered Designs for the Croissant Dôme Cuff Bracelet design, depicted below, in the European Union and the United Kingdom, and has a pending industrial design application in Canada, and a pending design patent application in the United States.[24]



**Registered Community Design No. 008595557-0001 (Croissant Dôme Cuff Bracelet)**

Likewise, for the Croissant Dôme Ring design, depicted below, Mejuri has a Registered Industrial Design in Canada, Registered Designs in the United Kingdom and the European Union, and a pending design patent application in the United States.[25]

---

[24] *See* European Union Registered Community Design No. 008595557-0001 (Croissant Cuff Bracelet); United Kingdom Registered Design No. 6148524 (Croissant Cuff Bracelet); Canada Industrial Design Application No. 204832; (Croissant Cuff Bracelet); United States Patent Application No. 29/768273 (Croissant Cuff Bracelet).
[25] *See* Canada Industrial Design Registration No. 189948 (Croissant Dôme Ring); United Kingdom Registered Design No. 90067479520001 (Croissant Dôme Ring); United Kingdom Registered Design No. 90067479520002 (Croissant Dôme Ring); European Union Registered Community Design No. 006747952-0001 (Croissant Dôme Ring); European Union Registered Community Design No. 006747952-0002 (Croissant Dôme Ring); United States Patent Application No. 29/702710 (Croissant Dôme Ring).



**Registered Community Design No. 006747952-0001 (Croissant Dôme Ring)**

Finally, for the Croissant Dôme Hoops design, depicted below, Mejuri has a Registered Industrial Design in Canada, Registered Designs in the United Kingdom and the European Union, and a pending design patent application in the United States.[26]



**Registered Community Design No. 006747952-0004 (Croissant Dôme Hoops)**

---

[26] *See* Canada Industrial Design Registration No. 189960 (Croissant Dôme Earrings); United Kingdom Registered Design No. 90067479520004 (Croissant Dôme Earrings); European Union Registered Community Design No. 006747952-0004 (Croissant Dôme Earrings); United States Patent Application No. 29/702714 (Croissant Dôme Earrings).

## YURMAN'S CLAIMS LACK MERIT

### A.  Yurman's Alleged Trade Dress Is Not Distinctive

30.        In an attempt to monopolize common design motifs and bully an emerging competitor, Yurman's Complaint alleges that it has protectable trade dress in certain designs: the Pure Form® Cable Bracelet, the Pure Form® Stack Rings, and the Cable Classics Earrings.

31.        However, virtually all the evidence cited in Yurman's Complaint in support of the claim that its Alleged Trade Dress has achieved consumer recognition actually relates to *other* Yurman designs, including its purportedly well-known cable bracelet, with its "signature helix motif," which Yurman itself claims launched the brand to fame:



**Yurman's "Iconic Cable Bracelet"**[27]

---

[27] Celebrating 30 Years of David Yurman's Iconic Cable Bracelet, INSTYLE, (Feb. 25, 2014) (cited at Compl. ¶ 24).

32.     On information and belief, Yurman has obtained federal trademark registrations relating to this specific cable bracelet design.

    

Reg. No. 4655095                    Reg. No. 5025164

33.     The Alleged Trade Dress that Yurman now claims to own as its exclusive property bears no resemblance to the "signature helix motif" that Yurman registered and references throughout its Complaint.  On information and belief, unlike the "signature helix motif," Yurman has not filed any application to register the Alleged Trade Dress with the United States Patent and Trademark Office.  It is no surprise then, that upon information and belief, this action constitutes Yurman's first lawsuit accusing another jewelry brand of infringing the Pure Form® Cable Bracelet, the Pure Form® Stack Rings, and the Cable Classics Earrings designs, despite the ubiquity of those design motifs in the jewelry marketplace.  Indeed, in this transparent attempt to harass an enterprising new competitor, Yurman's Complaint attempts to piggyback off its other, more well-known "signature helix motif" to claim rights in its Alleged Trade Dress against Mejuri.

### 1.   Yurman's Pure Form® Cable Bracelet Is Not Distinctive

34.     Upon information and belief, Yurman's Pure Form® Cable Bracelet, depicted below, lacks acquired distinctiveness, or secondary meaning, because in the minds of the public, the design of that product does not primarily serve to identify the source of the Pure Form® Cable Bracelet as Yurman.



**Alleged Trade Dress of David Yurman Pure Form® Cable Bracelet**

35.     A twist motif, the main characteristic of the Pure Form® Cable Bracelet that Yurman claims is its exclusive trade dress, is a common theme in bracelet designs, both historically and today.

36.     Just a few examples of the ubiquitous nature of twist designs in bracelets, including from some of the world's most recognizable jewelry brands—both modern and vintage—can be seen below:





Native American Silver Twist Bracelet[28]                                    Kay Jewelers[29]

---

[28] MISSION DEL RAY SOUTHWEST, *Native American Silver Twist Bracelet Navajo (ij286)*, https://www.missiondelrey.com/native-american-silver-twist-bracelet-navajo-ij286/ (last visited Mar. 3, 2022).
[29] KAY JEWELERS, *Italian Braided Bangle Bracelet*, https://www.kay.com/italian-braided-bangle-bracelet-14k-yellow-gold/p/V-723130201 (last visited Mar. 3, 2022).





Italian Twist Cable Bangle Bracelet[30]                Ben Bridge[31]





Tiffany & Co.[32]                Anna Beck Jewelry[33]

---

[30] CASE ANTIQUES, *Italian Twist Cable Bangle Bracelet*, https://caseantiques.com/item/lot-410-18k-italian-twist-cable-bangle-bracelet/ (last visited Mar. 3, 2022).
[31] BEN BRIDGE, *Toscano Twisted Rope Bangle Bracelet 14K*, https://www.benbridge.com/jewelry/toscano-twisted-rope-bangle-bracelet-14k-11070190.html (last visited Mar. 3, 2022).
[32] EBAY, *Vintage Authentic Tiffany & Co. 925 Sterling Silver Hinged Twist Bangle Bracelet*, https://www.ebay.com/itm/324193438615?chn=ps&norover=1&mkevt=1&mkrid=711-213727-13078-0&mkcid=2&itemid=324193438615&targetid=4581183927179148&device=c&mktype=&googleloc=&poi=&campaignid=418233787&mkgroupid=1241348861725295&rlsatarget=pla-4581183927179148&abcId=9300542&merchantid=51291&msclkid=1e4409b5f5bb10e4acb36bba1dc4764f (last visited Mar. 3, 2022).
[33] ANNA BECK, *Tapered Twist Cuff Bracelet*, https://www.annabeck.com/products/tapered-twist-cuff-bracelet?variant=39504242180142 (last visited Mar. 3, 2022).



Tiffany & Co.[34]



Cartier[35]



Tiffany & Co.[36]



Missoma[37]

---

[34] 1STDIBS, *Tiffany & Co. 18ky Twisted Bangle Bracele*t, https://www.1stdibs.com/jewelry/bracelets/bangles/tiffany-co-18ky-twisted-bangle-bracelet/id-j_12531082/ (last visited Mar. 3, 2022).

[35] TRADESY, *Cartier Gold Vintage Lapis Lazuli Twisted Bypass Bangle Bracelet*, https://www.tradesy.com/i/cartier-gold-vintage-lapis-lazuli-twisted-bypass-bangle-bracelet/26979542/ (last visited Mar. 3, 2022).

[36] SPRINGER'S, *Tiffany & Co. Shrimp Bangle Bracelet*, https://www.springersjewelers.com/products/estate-shrimp-bangle-bracelet?variant=12620590841899&currency=USD&utm_medium=product_sync&utm_source=google&utm_content=sag_organic&utm_campaign=sag_organic&utm_campaign=gs-2019-02-05&utm_source=google&utm_medium=smart_campaign&gclid=EAIaIQobChMIzMOc46iM9gIVrAaAICR01TAerEAQYASABEgKpBvD_BwE (last visited Mar. 3, 2022).

[37] MISSOMA, *Tidal Cuff Bracelet*, https://www.missoma.com/products/tidal-cuff-bracelet (last visited Mar. 3, 2022).



Macy's[38]



Modesens[39]



Blue Nile[40]



Trollbeads[41]

---

[38] MACY'S, *Twist Hinge Bangle Bracelet*, https://www.macys.com/shop/product/italian-gold-twist-hinge-bangle-bracelet-in-14k-gold-or-white-gold?ID=1654968 (last visited Mar. 3, 2022).

[39] MODESENS, *Twisted Bangle Bracelet*, https://modesens.com/product/bloomingdale-s-twisted-bangle-bracelet-in-14k-yellow-gold-100-exclusive-17186615/ (last visited Mar. 3, 2022).

[40] BLUE NILE, *Roped Bangle*, https://www.bluenile.com/roped-bangle-14k-italian-yellow-gold_87888 (last visited Mar. 3, 2022).

[41] TROLLBEADS, *Twisted Gold Plated Bangle*, https://trollbeadsakron.com/trollbeads-twisted-gold-plated-bangle/ (last visited Mar. 3, 2022).



San Marco Link Bracelet[42]

37.     Yurman was not the first to use a twist motif.  Indeed, twist designs have been

used extensively in jewelry designs for millennia.  Since at least ancient Roman times, twist motifs

have been commonplace in jewelry, as shown below:





Roman Gold Bracelet, 2nd century AD[43]          Roman Gold Bracelet, 2nd century AD[44]

[42] Chelseagirl nyc, INSTAGRAM, https://www.instagram.com/p/CXbbldJrtR6/  (last visited Mar. 3, 2022).
[43] SOTHEBY'S, *A Roman Gold Bracelet, Circa 2nd Century A.D.*,
https://www.sothebys.com/en/buy/auction/2019/ancient-sculpture-and-works-of-art-2/a-roman-gold-bracelet-circa-2nd-century-a-d (last visited Mar. 3, 2022).
[44] CHRISTIE'S, *A Roman Gold Bracelet, Circa 2nd Century A.D.*, https://www.christies.com/lot/lot-a-roman-gold-bracelet-circa-2nd-century-5158111/?from=salesummary&pos=3&intObjectID=5158111&sid=614e2ec4-a495-490b-8e5b-68d7e8835615&page=7 (last visited Mar. 3, 2022).



English Medieval Ring[45]



Gold Torc of the Middle Bronze Age[46]



Roman Gold Bracelet, 2nd century AD[47]



Ipswich Hoard Gold Torc, 75 BC[48]

---

[45] 7000 YEARS OF JEWELRY 139 (Hugh Tait ed., 2008).

[46] 7000 YEARS OF JEWELRY 50 (Hugh Tait ed., 2008).

[47] CHRISTIE'S, *A Roman Gold Bracelet, Circa 2nd Century A.D.*, https://onlineonly.christies.com/s/ancient-jewelry-wearable-art/roman-gold-bracelet-19/23635 (last visited Mar. 3, 2022).

[48] BRITISH MUSEUM, *Ipswich Hoard Gold Torcs*, https://britishmuseum.withgoogle.com/object/ipswich-hoard-gold-torcs (last visited Mar. 3, 2022).




Gold Bracelet from Iran, 7th Century BC[49]          Egyptian Gold Bangle, 100 BC–300 AD[50]

38.     Given the commonplace nature of the twist motif, Yurman cannot legitimately claim the Pure Form® Cable Bracelet design as unique to Yurman, much less as protectable trade dress exclusive to Yurman.  Nor can Yurman legitimately claim that consumers associate the appearance of the Pure Form® Cable Bracelet with Yurman, as opposed to any other company offering a similar design.  Yurman's Complaint constitutes an improper attempt to monopolize a common twist motif that has been around for centuries and to limit the design options that are available to other competitors in the jewelry industry.

39.     Further, upon information and belief, consumers do not associate the appearance of the Pure Form® Cable Bracelet with Yurman because Yurman has sold a relatively small number of those products since their release in August 2016, and those sales comprise only a small percentage of Yurman's overall business.[51]

40.     Further, nowhere in its Complaint does Yurman point to consumer studies indicating that consumers associate the Pure Form® Cable Bracelet with Yurman.  Likewise,

---

[49] 7000 YEARS OF JEWELRY 56 (Hugh Tait ed., 2008).
[50] 7000 YEARS OF JEWELRY 93 (Hugh Tait ed., 2008).
[51] See Compl. ¶ 39.

Yurman describes no attempts to enforce its alleged trade dress in the Pure Form® Cable Bracelet, despite the ubiquity of twist designs in bracelets on the market today.  Instead, upon information and belief, Yurman has chosen to selectively target Mejuri.

41.     Consequently, the Pure Form® Cable Bracelet lacks acquired distinctiveness, because in the minds of the public, the primary significance of the design of the Pure Form® Cable Bracelet is not to identify the source of that product as Yurman.

### 2.   Yurman's Pure Form® Stack Rings Are Not Distinctive

42.     Upon information and belief, the Pure Form® Stack Rings, depicted below, lack acquired distinctiveness, or secondary meaning, because in the minds of the public, the design of those products does not primarily serve to identify the source of the Pure Form® Stack Rings as Yurman.



**Alleged Trade Dress of David Yurman Pure Form® Stack Rings**

43.     As with the Pure Form® Cable Bracelet, twist and smooth design motifs are common in ring designs in the jewelry marketplace, and combining these twist and smooth design motifs as a pair is likewise commonplace.  Examples of the ubiquity of the twist and smooth design motifs—both modern and vintage—that Yurman attempts to claim as its own exclusive trade dress in The Pure Form® Stack Rings, can be seen below:

– 25 –



Missoma[52]



Ferkos Fine Jewelry[53]



Ferkos Fine Jewelry[54]



Amyo[55]

---

[52] Missoma, *Radial Ring,* https://www.missoma.com/products/radial-ring?variant=39389012164652&queryId=d3d53f1fa681f20fb02da2c063647059&pdpIndex=usd_production_plp_products&objectId=39389012164652&fromPdp=1 (last visited Mar. 3, 2022).

[53] Ferkos Fine Jewelry, *14k Gold Twisted Rope Ring Set,* https://ferkosfinejewelry.com/collections/gold-rings/products/stacking-set-of-rings-wedding-ring-set (last visited Mar. 3, 2022).

[54] Ferkos Fine Jewelry, *14k Bubble Ring Set,* https://ferkosfinejewelry.com/collections/gold-rings/products/14k-bubble-ring-set (last visited Mar. 3, 2022).

[55] Amyo, *Classic Band And Rope Ring Set,* https://amyojewelry.com/collections/rings/products/classic-band-and-rope-ring-set-gold-vermeil (last visited Mar. 3, 2022).

   

Lovisa[56]                Miss. F&D[57]



Sophie Buhai[58]

[56] Lovisa, *Gold Plated Twisted and Plain Ring Set*, https://www.lovisa.com/products/real-gold-plated-twisted-and-plain-4-pack-ring (last visited Mar. 3, 2022).

[57] Amazon Fashion, Miss.F&D Gold Ring Stacking Double Rows Band Ring Trendy Stainless Steel Hypoallergenic Waterproof Ring, https://www.amazon.com/Miss-F-Stacking-Hypoallergenic-Waterproof-Hemptwist/dp/B09J3LPPKG?ref_=ast_sto_dp&th=1&psc=1 (last visited Mar. 3, 2022).

[58] Lyst, *Sophie Buhai Women's Metallic Stacked Rope 18kt Gold-vermeil Ring*, https://www.lyst.com/jewelry/sophie-buhai-stacked-rope-18kt-gold-vermeil-ring-1/ (last visited Mar. 3, 2022).




Hermes[59]

Caitlyn Minimalist[60]




Ana Luisa[61]

Ana Luisa[62]

---

[59] EBAY, *Hermes Rope Scarf Ring Gold*, https://www.ebay.com/itm/224829469476?chn=ps&_trkparms=ispr%3D1&amdata=enc%3A1ptNtKnMaT_-Sn3_ME2lVzA91&norover=1&mkevt=1&mkrid=711-213727-13078-0&mkcid=2&itemid=224829469476&targetid=4581046489808870&device=c&mktype=&googleloc=&poi=&campaignid=418640322&mkgroupid=1239149842233245&rlsatarget=pla-4581046489808870&abcId=9300602&merchantid=51291&msclkid=ace41a3c6f021876329978339d672472 (last visited Mar. 3, 2022).

[60] CAITLYN MINIMALIST, *Twisted Dome Ring*, https://caitlynminimalist.com/collections/rings/products/twisted-dome-ring (last visited Mar. 3, 2022).

[61] ANA LUISA, *Rope Slim*, https://www.analuisa.com/products/gold-twist-ring-rope-slim (last visited Mar. 3, 2022).

[62] ANA LUISA, *Rope Bold*, https://www.analuisa.com/products/gold-twist-ring-rope-bold?glCountry=US&glCurrency=USD&utm_source=google&utm_medium=cpc&utm_source=google&utm_medium=cpc&utm_campaign=smart-shopping-us-tier2&utm_adgroup=&gclid=EAIaIQobChMI7s7AkKGE9gIVFInICh30zAm3EAQYASABEgJK1_D_BwE (last visited Mar. 3, 2022).



Kinn[63]



Local Eclectic[64]



Established[65]



Sophie Buhai[66]

---

[63] KINN, *Claudine Twist Ring II*, https://kinnstudio.com/products/claudine-twist-ring-ii?variant=30329578094691&currency=USD&utm_medium=product_sync&utm_source=google&utm_content=sag_organic&utm_campaign=sag_organic&gclid=Cj0KCQiAmKiQBhClARIsAKtSj-kjzI5vzB3dBi0ZquekwuCspnLfdmBEww_Lt4h08hM4i-95ak9qGd8aAsbZEALw_wcB (last visited Mar. 3, 2022).

[64] LOCAL ECLECTIC, *Solid Gold Twisted Signet Ring*, https://www.localeclectic.com/products/solid-gold-twisted-signet-ring?currency=USD&variant=39279733702832&glCountry=US&glCurrency=USD (last visited Mar. 3, 2022).

[65] SSENSE, *Established Gold Rope Pinky Ring*, https://www.ssense.com/en-us/women/product/established/gold-rope-pinky-ring/8285921 (last visited Mar. 3, 2022).

[66] SSENSE, *Sophie Buhai Silver Large Rope Ring*, https://www.ssense.com/en-us/women/product/sophie-buhai/silver-large-rope-ring/9074731?gclid=Cj0KCQiAmKiQBhClARIsAKtSj-ljznfcKaJNXmNXNr5WUOtiqtMI2u-y3y2eWVZCdL3usIhXfHcRib8aArAEEALw_wcB (last visited Mar. 3, 2022).





Tiffany & Co.[67]                    Tiffany & Co.[68]





Zoe Lev[69]                          Anna Beck Jewelry[70]

---

[67] YOOGI'S CLOSET, *Tiffany & Co. 18k Yellow Gold Twist Ring*, https://www.yoogiscloset.com/jewelry/tiffany-co-18k-yellow-gold-twist-ring-size-5.html (last visited Mar. 3, 2022).

[68] LEO HAMEL, *Vintage Tiffany & Co. Twist Rope Ring*, https://www.leohamel.com/vintage-tiffany-co-sterling-silver-twist-rope-ring-size-8-25 (last visited Mar. 3, 2022).

[69] ZOE LEV, *14k Gold Gradient Twist Ring*, https://zoelev.com/products/14k-gold-gradient-twist-ring (last visited Mar. 3, 2022).

[70] ANNA BECK JEWELRY, *Tapered Twisted Ring*, https://www.annabeck.com/products/tapered-twisted-ring?variant=39504260464686 (last visited Mar. 3, 2022).



Madewell[71]



Mid Century Dome Ring[72]



Ana Luisa[73]



Missoma[74]

[71] MADEWELL, *Puffed Dome Ring*, https://www.madewell.com/puffed-dome-ring-ND379.html (last visited Mar. 3, 2022).

[72] Chelseagirl nyc, INSTAGRAM, https://www.instagram.com/p/CXJS0LMrRHR/ (last visited Mar. 3, 2022).

[73] ANA LUISA, *Noa*, https://www.analuisa.com/products/gold-dome-ring-noa (last visited Mar. 3, 2022).

[74] MISSOMA, *Dome Plain Ring*, https://www.missoma.com/products/dome-ring?storeRedirect=US&msclkid=a0689f6ff2881de108e1fd6588f8cc07&utm_source=bing&utm_medium=cpc&utm_campaign=US%20%7C%20Smart%20Shopping%20%7C%20All%20Products&utm_term=4583657839605020&utm_content=All%20products (last visited Mar. 3, 2022).



Miranda Frye[75]                    Kinn[76]

Zoe Lev[77]                    Sophiya[78]

44.        Similarly, to the extent that Yurman claims trade dress rights in the stacked

characteristic of The Pure Form® Stack Rings, that element is not exclusive to Yurman, as shown

by several of the examples above.  Stacking is a well-known way in which jewelry has been worn

for centuries.  For instance, wedding and engagement rings are commonly stacked.

45.        Given the commonplace nature of the twist and smooth motifs and stacking

of those motifs, Yurman cannot legitimately claim those aspects of the Pure Form® Stack Rings

as unique to Yurman, much less as protectable trade dress.  Nor can Yurman legitimately claim

---

[75] MIRANDA FRYE, *Noel Ring*, https://mirandafrye.com/products/noel-ring?variant=32016117104700 (last visited
Mar. 3, 2022).
[76] KINN, *Dare To Love, Dome Ring I*, https://kinnstudio.com/products/dare-to-love-classic-dome-ring (last visited
Mar. 3, 2022).
[77] ZOE LEV, *14K Gold Dome Band Ring*, https://zoelev.com/products/14k-gold-dome-band-ring (last visited Mar. 3,
2022).
[78] SOPHIYA, *Dylan Ring*, https://sophiyajewelry.com/product/dylan-dome-ring/ (last visited Mar. 3, 2022).

that consumers associate the appearance of the Pure Form® Stack Rings with Yurman, as opposed to any other company offering a similar design. Once again, Yurman's Complaint is an improper attempt to restrict the designs that are available for other competitors to use.

46.    Further, upon information and belief, consumers do not associate the appearance of the Pure Form® Stack Rings with Yurman because Yurman has sold a relatively small number of those products since their release in August 2016, and those sales comprise only a small percentage of Yurman's overall business.[79]

47.    Further, nowhere in its Complaint does Yurman point to consumer studies indicating that consumers associate the look of the Pure Form® Stack Rings with Yurman. Likewise, other than the alleged infringement in this lawsuit, Yurman describes no infringement of its alleged trade dress in the Pure Form® Stack Rings. In fact, upon information and belief, despite the ubiquity of twist and smooth design motifs, and the stacking of those motifs on rings in the jewelry industry, Yurman has not previously sought to enforce its supposed trade dress rights in the Pure Form® Stack Rings, instead choosing to selectively target Mejuri.

48.    Consequently, the Pure Form® Stack Rings lack acquired distinctiveness, because in the minds of the public, the primary significance of the design of the Pure Form® Stack Rings is not to identify the source of that product as Yurman.

### 3.  Yurman's Cable Classics Earrings Are Not Distinctive

49.    Upon information and belief, Yurman's Cable Classics Earrings, depicted below, lack acquired distinctiveness, or secondary meaning, because in the minds of the public, the design of those products does not primarily serve to identify the source of the Cable Classics Earrings as Yurman.

---

[79] *See* Compl. ¶ 44.



**Alleged Trade Dress of David Yurman Cable Classics Earrings**

50.     As with the Pure Form® Cable Bracelet and the Pure Form® Stack Rings, a twist motif is a common theme in earring designs.  Examples of the ubiquity of the twist design that Yurman attempts to claim as its own exclusive trade dress in the Cable Classics Earrings, can be seen below:





Ellie Vail[80]                              Jennifer Fisher[81]

---

[80] ELLIE VAIL, *Cordelia Twist Hoop Earring*, https://ellievailjewelry.com/products/ellie-vail-cordelia-twist-hoop-earring?_pos=1&_sid=ac8fcd7ec&_ss=r (last visited Mar. 3, 2022).
[81] JENNIFER FISHER, *Double Twisted Lilly Huggies*, https://jenniferfisherjewelry.com/products/double-twisted-lilly-huggies (last visited Mar. 3, 2022).



Zoe Lev[82]



Aqua[83]



Laura Lombardi[84]



Gorjana[85]

[82] ZOE LEV, *14K Gold Braided Huggie Earrings*, https://zoelev.com/products/14k-gold-braided-huggie-earrings?variant=40882968330413&currency=USD&utm_medium=product_sync&utm_source=google&utm_content=sag_organic&utm_campaign=sag_organic&utm_campaign=gs-2021-11-14&utm_source=google&utm_medium=smart_campaign&gclid=EAIaIQobChMIqoW2gLqE9gIVld7ICh2NIgt3EAQYBCABEgIXH_D_BwE (last visited Mar. 3, 2022).

[83] BLOOMINGDALES, *Aqua Twist Hoop Earrings*, https://www.bloomingdales.com/shop/product/aqua-twist-hoop-earrings-100-exclusive?ID=4053855 (last visited Mar. 3, 2022).

[84] SSENSE, *Laura Lombardi Gold Mini Twist Hoop Earrings*, https://www.ssense.com/en-us/women/product/laura-lombardi/gold-mini-twist-hoop-earrings/9075961 (last visited Mar. 3, 2022).

[85] GORJANA, *Crew Hoop Set*, https://gorjana.com/products/crew-hoop-set?variant=39542433153155&b_adgroup=Earrings%20Product%20Categories&b_adgroupid=1343604249162780&b_adid=83975407459639&b_campaign=smart-shopping_earrings_mixed&b_campaignid=418804124&b_isproduct=product&b_productid=39542433153155&b_term=default&b_termid=pla-4587574834792665&msclkid=8c63a1d018ae1666010cc3dfe26ec9ce&utm_source=bing&utm_medium=cpc&utm_campaign=smart- (last visited Mar. 3, 2022).



Simple & Dainty[86]



Club Monaco[87]



Ross Simmons[88]



Ash's Choice[89]

---

[86] SIMPLE & DAINTY, *Twist Hoop Earrings*, https://simpleanddainty.com/products/twist-hoop-earrings?variant=40242846367942 (last visited Mar. 3, 2022).

[87] CLUB MONACO, *Serefina Twist Hoop Earrings*, https://www.clubmonaco.com/en/women-accessories-jewelry/serefina-twist-hoop-earrings/602869.html (last visited Mar. 3, 2022).

[88] ROSS SIMMONS, *Italian 18kt Gold Graduated Twisted Hoop Earrings*, https://www.ross-simons.com/italian-18kt-yellow-gold-graduated-twisted-hoop-earrings-900859.html?gclid=981ea1cb8e641e18290bc3db8e08d2a2&gclsrc=3p.ds&msclkid=981ea1cb8e641e18290bc3db8e08d2a2&utm_source=bing&utm_medium=cpc&utm_campaign=PLA%20%7C%20Smart%20Shopping%20%7C%20Earrings&utm_term=4580290572430610&utm_content=Earrings (last visited Mar. 3, 2022).

[89] AMAZON, *Ash's Choice*
*14K Gold Plated Twist Hoop Earrings Chunky Sterling Silver Earrings, Lightweight High Polished Hypoallergenic Earrings, Gold Hoop Earrings for Women, Stylish Women Earrings*
, https://www.amazon.com/Twisted-Earrings-Plated-Lightweight-Hypoallergenic/dp/B08HZ72YNV?&linkCode=sl1&tag=usmagazine05-20&linkId=c3a9f11c802f51f2f651554802b36245&language=en_US&ref_=as_li_ss_tl (last visited Mar. 3, 2022).



Asos[90]



Lyst[91]




DISSH[92]



Ana Luisa [93]

---

[90] Asos, *14k Gold Plated Twist Hoop Earrings*, https://www.asos.com/us/asos-design/asos-design-14k-gold-plated-twist-hoop-earrings/prd/21896959 (last visited Mar. 3, 2022).

[91] Lyst, *Women's Metallic Twisted Sphere Hoop Earrings*, https://www.lyst.com/jewelry/other-stories-twisted-sphere-hoop-earrings/ (last visited Mar. 3, 2022).

[92] DISSH, *Aria Gold Plated Twist Hoop Earring*, https://dissh.com/products/aria-gold-plated-twist-hoop-earring (last visited Mar. 3, 2022).

[93] Ana Luisa, *VIVI*, https://www.analuisa.com/products/gold-twist-hoops-vivi?glCountry=US&glCurrency=USD#smart (last visited Mar. 3, 2022).




Hey Harper[94]            Madewell[95]



Ana Luisa[96]

51.       Given the ubiquitous nature of the twist motif in earring designs, Yurman

cannot legitimately claim that aspect of the Cable Classics Earrings as unique to Yurman, much

less as protectable trade dress.  Nor can Yurman legitimately claim that consumers associate the

appearance of the Cable Classics Earrings with Yurman, as opposed to any other company offering

a similar design.  Once again, Yurman seeks a monopoly on common design motifs to which it is

not entitled.

---

[94] HEY HARPER, *Dove Huggie*, https://us heyharpershop.com/products/dove-huggie-earrings (last visited Mar. 3, 2022).
[95] MADEWELL, *Puffed Small Hoop Earrings*, https://www.madewell.com/puffed-small-hoop-earrings-ND298 html (last visited Mar. 3, 2022).
[96] ANA LUISA, *Paris*, https://www.analuisa.com/products/twisted-hoop-earrings-paris (last visited Mar. 3, 2022).

52.     Further, upon information and belief, consumers do not associate the appearance of the Cable Classics Earrings with Yurman because Yurman has sold a relatively small number of those designs since their release in January 2013, and those sales comprise only a small percentage of Yurman's overall business.[97]

53.     Notably absent from Yurman's Complaint are any examples of advertisements for the Cable Classics Earrings. Despite providing five advertising examples of its Pure Form® collection, Yurman did not provide a single example of an advertisement for its Cable Classics Earrings.[98] Moreover, Yurman's advertising example for its Sculpted Cable collection did not portray the Cable Classics Earrings.[99] Likewise, Yurman failed to provide any examples of unsolicited media coverage for the Cable Classics Earrings.

54.     Moreover, nowhere in its Complaint does Yurman point to consumer studies indicating that consumers associate the appearance of the Cable Classics Earrings with Yurman. Likewise, Yurman describes no attempts to enforce its alleged trade dress in the Cable Classics Earrings, despite the ubiquity of the twist motif on earrings currently on the market and instead, upon information and belief, has selectively targeted Mejuri.

55.     Consequently, the Cable Classics Earrings lack acquired distinctiveness, because in the minds of the public, the primary significance of the design of the Cable Classics Earrings is not to identify the source of those products as Yurman.

**B.  Yurman's Alleged Trade Dress is Functional**

56.     On information and belief, Yurman's Alleged Trade Dress is also not protectable because it is aesthetically functional.

---

[97] *See* Compl. ¶ 49.
[98] *See* Compl. ¶ 55.
[99] *See* Compl. ¶ 30.

**1. The Features of Yurman's Pure Form® Cable Bracelet Claimed as Trade Dress Are Aesthetically Functional**

57.     On information and belief, the features of Yurman's Pure Form® Cable Bracelet that it claims as trade dress are aesthetically functional because granting Yurman the right to use those features exclusively would put competitors in the jewelry industry at a significant non-reputation related disadvantage.

58.     As set forth above, many jewelry brands offer bracelets with a twist motif, and twist designs have been used extensively in jewelry design for millennia.  *See* ¶¶ 36–37.

59.     Preventing other jewelry brands from using twist designs on bracelets would put competitors in the jewelry industry at a significant non-reputation related disadvantage.  As such, the main characteristics of the Pure Form® Cable Bracelet that Yurman claims are part of its alleged trade dress are aesthetically functional.

**2. The Features of Yurman's Pure Form® Stack Rings Claimed as Trade Dress are Aesthetically Functional**

60.     On information and belief, the features of Yurman's Pure Form® Stack Rings that it claims as trade dress are aesthetically functional because granting Yurman the right to use those features exclusively would put competitors in the jewelry industry at a significant non-reputation related disadvantage.

61.     As set forth above, many jewelry brands offer pairs of rings with a twist and smooth design motif, and twist designs have been used extensively in jewelry design for millennia. *See* ¶¶ 37, 43.

62.     Likewise, the concept of stacking is commonplace in jewelry design and styling. *See* ¶¶ 43, 100–101.

– 40 –

63.        Preventing other jewelry brands from using twist designs and stacking in designing and styling rings would put competitors in the jewelry industry at a significant non-reputation related disadvantage.  As such, the main characteristics of the Pure Form® Stack Rings that Yurman claims are part of its alleged trade dress are aesthetically functional.

### 3. The Features of Yurman's Cable Classics Earrings That It Claims as Trade Dress are Aesthetically Functional

64.        On information and belief, the features of Yurman's Cable Classics Earrings that it claims as trade dress are aesthetically functional because granting Yurman the right to use those features exclusively would put competitors in the jewelry industry at a significant non-reputation related disadvantage.

65.        As set forth above, many jewelry brands offer earrings with a twist motif, and twist designs have been used extensively in jewelry design for millennia.  *See* ¶¶ 37, 50.

66.        Preventing other jewelry brands from using twist designs on earrings would put competitors in the jewelry industry at a significant non-reputation related disadvantage.  As such, the main characteristics of the Cable Classics Earrings that Yurman claims are part of its alleged trade dress are aesthetically functional.

### C. Consumers Are Not Likely to Confuse Mejuri's Products with Yurman's Alleged Trade Dress

67.        Yurman's allegations of confusion rely on misleading images of Mejuri's products, purposefully depicted in a manner that masks the defining features of those designs. When viewed accurately, it is clear that Mejuri's accused designs contain numerous elements that distinguish them from Yurman's Alleged Trade Dress.

1. **There is No Likelihood of Confusion Between Mejuri's Croissant Dôme Bracelet or Croissant Dôme Cuff Bracelet and Yurman's Pure Form® Cable Bracelet**

68.     As an initial matter, consumers are not likely to confuse Mejuri's Croissant Dôme Bracelet with Yurman's Pure Form® Cable Bracelet because Mejuri discontinued sales of its Croissant Dôme Bracelet product in October 2020, more than a year before Yurman filed its lawsuit and for reasons wholly unrelated to the lawsuit.

69.     Nevertheless, Yurman fails to allege any actual confusion between the Pure Form® Cable Bracelet and Mejuri's Croissant Dôme Bracelet or Mejuri's Croissant Dôme Cuff Bracelet.

70.     This is not surprising because Mejuri's Croissant Dôme Bracelet and Croissant Dôme Cuff Bracelet are readily distinguishable from Yurman's Alleged Trade Dress.

71.     When it was on the market prior to October 2020, Mejuri's Croissant Dôme Bracelet had a croissant-inspired pattern with recessed grooves and tapered volume down the sides that graduated from wide to narrow from top to bottom—much like the shape of a croissant or a risen loaf of bread.  In contrast, Yurman's Pure Form® Cable Bracelet is characterized by a twisting cable, rope-like design all the way around the bracelet.

72.     Further, Mejuri's Croissant Dôme Cuff Bracelet is an open cuff bracelet that does not go all the way around the wrist.  Mejuri's Croissant Dôme Cuff Bracelet also has a croissant-inspired pattern with recessed grooves and tapered volume down the sides that graduate from wide to narrow from top to bottom—much like the shape of a croissant or a risen loaf of bread.  In contrast, Yurman's Pure Form® Cable Bracelet is a closed bracelet with a clasp, and is characterized by a twisting cable, rope-like design all the way around the bracelet.



Mejuri's Croissant Dôme Cuff Bracelet



Yurman's Pure Form® Cable Bracelet



Mejuri's Croissant Dôme Cuff Bracelet



Mejuri's Croissant Dôme Bracelet



Mejuri's Croissant Dôme Cuff Bracelet



Yurman Pure Form® Cable Bracelet

73.        Additionally, unlike Yurman's Pure Form® Cable Bracelet, Mejuri's Croissant Dôme Bracelet and Croissant Dôme Cuff Bracelet are hollowed in the interior, a distinction that Yurman concedes in its Complaint.[100]  Mejuri designers intentionally hollowed the interior to save on manufacturing costs and to make the pieces lighter and more comfortable to wear, without compromising on the design or materials.  Those cost savings are then passed on to the consumer, promoting Mejuri's goal of creating affordable, everyday jewelry, while still maintaining the high quality expected of Mejuri's products.

74.        Given the many differences in the appearance of the Pure Form® Cable Bracelet and Mejuri's accused Croissant Dôme Bracelet and Croissant Dôme Cuff Bracelet, consumers are unlikely to confuse them with one another, especially in view of the many other similar twist bracelet designs available in the market.  *See* ¶¶ 36–37.  The existence of these other twist designs confirms the weak (at best) nature of Yurman's Alleged Trade Dress and undercuts any claim that consumers seeing Mejuri's designs are going to believe that Yurman is the source of those designs or that Mejuri is authorized by or affiliated with Yurman.

75.        Confusion is also highly unlikely because of the distinctly different target audiences for the parties' products.  Yurman's Pure Form® Cable Bracelet retails for $800 (sterling silver) to $6500 (18K gold). [101]  In contrast, as a result of Mejuri's innovative business model, as described above, Mejuri is able to sell the Croissant Dôme Cuff Bracelet for $135 (sterling silver) to $150 (gold vermeil) and sold the Croissant Dôme Bracelet for $105 when it was available.[102]  Consequently, it is unlikely that consumers, who intentionally seek out Mejuri

---

[100] *See* Compl. ¶¶ 84–85.

[101] *See* DAVID YURMAN, *Pure Form® Cable Bracelet*, https://www.davidyurman.com/products/womens/womens-bracelets/pure-form-cable-bracelet-95mm-b13062-ss.pdp.html?swatchCode=B13062%20SSZZZ (last visited Mar. 3, 2022).

[102] *See* MEJURI, *Croissant Dôme Cuff Bracelet*, https://mejuri.com/shop/products/croissant-dome-cuff-bracelet-silver (last visited Mar. 3, 2022).

products for their accessible price points, would be likely to confuse Mejuri's Croissant Dôme Bracelet or Croissant Dôme Cuff Bracelet with Yurman's Pure Form® Cable Bracelet.  Part of Mejuri's goal in offering its products at these more affordable prices is to empower women to buy fine jewelry for themselves for their everyday wear, disrupting the traditional notion that women's jewelry should be gifted to women for a special occasion.  Mejuri therefore caters to a modern, typically younger, generation of women who are seeking high-quality, but affordable, fine jewelry. Given the steep prices of its products, upon information and belief, Yurman caters to a more traditional jewelry consumer, often a man purchasing a gift for his spouse, partner, or girlfriend, who is typically older.  Therefore, there is little overlap in the purchasers of the parties' products, and little opportunity for confusion.

76.      Further reducing the likelihood of confusion is the sophistication of Mejuri's consumers.  Mejuri consumers are intentional about the design of their jewelry purchases and deliberative in which companies they choose to buy from, choosing to buy from Mejuri in part because of its commitment to women and sustainability, and the community that it has built around those principles.  It is no surprise, therefore, that almost half of Mejuri's sales are to repeat purchasers.  As a result, it is highly unlikely that such consumers would confuse Mejuri's Croissant Dôme Bracelet or Croissant Dôme Cuff Bracelet with Yurman's Pure Form® Cable Bracelet.

77.      Moreover, Yurman's Pure Form® Cable Bracelet and Mejuri's Croissant Dôme Cuff Bracelet are sold through distinct channels, as was true with the Croissant Dôme Bracelet when it was on the market.  While Yurman sells its products to department stores and third-party retailers, Mejuri only sells its products via its own branded website or retail stores, and in fact is known for its direct-to-consumer model, which is unique in the jewelry industry.  As a result, it is highly unlikely that consumers would confuse Mejuri's Croissant Dôme Bracelet or

Croissant Dôme Cuff Bracelet with Yurman's Pure Form® Cable Bracelet since Yurman's products are never sold alongside Mejuri's products at the point of purchase.

78.     As described above, Mejuri adopted the Croissant Dôme Bracelet and Croissant Dôme Cuff Bracelet in good faith, based on an independent and rigorous design process that was in no way influenced by Yurman's products.  *See* ¶¶ 23–26.  Mejuri has never sought to emulate Yurman or its products, nor would it make any sense for it to do so, given the distinct customer base to which its products are targeted.

79.     As with all of Mejuri's products, Mejuri's discontinued Croissant Dôme Bracelet was, and Mejuri's Croissant Dôme Cuff Bracelet is, composed of the highest quality materials that are crafted to be durable enough for everyday wear.  Mejuri stands by the forever quality of its pieces, backing them up with a two-year warranty in the event of any damage to the metal or workmanship.  And, when Mejuri becomes aware of issues with the quality or manufacturing of any of its products, it proactively works to resolve and address those issues so that they do not affect future products.  Mejuri's reputation for high quality is evidenced by the many favorable reviews on Mejuri's social media pages, as well as the fact that so many of its customers are repeat Mejuri customers.

80.     Considering all of these factors, it is unlikely that consumers will confuse Mejuri's Croissant Dôme Bracelet and Croissant Dôme Cuff Bracelet with Yurman's Pure Form® Cable Bracelet.

**2.  There is No Likelihood of Confusion Between Mejuri's Thin Croissant Dôme and Thin Dôme Rings and Yurman's Pure Form® Stack Rings**

81.     Consumers are not likely to confuse Mejuri's Thin Croissant Dôme and Thin Dôme Rings with Yurman's Pure Form® Stack Rings.

– 46 –

82.     Yurman fails to allege any actual confusion between the Pure Form® Stack Rings and Mejuri's Thin Croissant Dôme Ring and Thin Dôme Ring.

83.     Mejuri's Thin Croissant Dôme Ring and Thin Dôme Ring are readily distinguishable from Yurman's Pure Form® Stack Rings.  In contrast to Yurman's Pure Form® Stack Rings, one of which has a twist design around the entire circumference of the ring (including on both the outside and inside surfaces), Mejuri's Thin Croissant Dôme Ring has a croissant-inspired pattern only on the top outside portion of the ring, while the lower portion of the ring and the inside surface are both smooth.  Further, the Thin Croissant Dôme Ring's pattern is sculpted with recessed grooves and tapered volume down the sides that graduate from wide to narrow from top to bottom—much like the shape of a croissant or a risen loaf of bread—unlike Yurman's Pure Form® Stack Rings, one of which includes a pattern that looks more like a twisted rope, or two cables wound together.  Additionally, unlike Yurman's Pure Form® Stack Rings, Mejuri's Thin Croissant Dôme Rings and Thin Dôme Rings are hollowed in the interior.





Mejuri's Thin Croissant Dôme Ring                    Mejuri's Thin Dôme Ring



Yurman's Pure Form® Stack Rings



Mejuri's Thin Croissant Dôme Ring



Mejuri's Thin Dôme Ring



Yurman's Pure Form® Stack Rings

84.      Given the many differences in the appearance of the Pure Form® Stack Rings and Mejuri's accused Thin Croissant Dôme Ring and Thin Dôme Ring, consumers are unlikely to confuse them with one another, especially in view of the many other similar twist and smooth ring designs available in the market, including several that are sold as a set.  *See* ¶ 43.  The existence of these other twist and smooth designs that are stacked together confirms the weak (at best) nature of Yurman's alleged trade dress in its Pure Form® Stack Rings and undercuts any claim that consumers seeing Mejuri's Thin Croissant Dôme Ring and Thin Dôme Ring are going to believe that Yurman is the source of those designs or that Mejuri is authorized by or affiliated with Yurman.

85.      Further, consumers are unlikely to confuse Mejuri's Thin Croissant Dôme and Thin Dôme Rings with Yurman's Pure Form® Stack Rings, because Mejuri's rings are not sold as a pair.  Yurman's alleged trade dress in the Pure Form® Stack Rings is explicitly defined as "[t]wo rings" … "[o]ne ring of the pair of the ring including: [s]culpted cable motif"… "[o]ne ring of the pair including: [r]ound and smooth edges[.]"[103]  Consequently, at the point of purchase, a consumer viewing either the Thin Croissant Dôme or Thin Dôme Rings, which are sold by Mejuri in

---

[103] Compl. ¶ 41.

isolation, is unlikely to confuse those products with Yurman's alleged trade dress in its Pure Form® Stack Rings, which is defined as consisting of "[t]wo rings" sold as a pair.

86.          Confusion is also highly unlikely because of the distinctly different target audiences for the parties' products.  Yurman's Pure Form® Stack Rings retail for $500 (sterling silver) to $2,200 (18K gold). [104]  In contrast, as a result of Mejuri's innovative model, as described above, Mejuri is able to sell its high-quality Thin Croissant Dôme Ring ($345 (14K white gold and 14K yellow gold)) and Thin Dôme Ring (($295 (14K white gold and 14K yellow gold)) at substantially lower prices. [105]  Consequently, it is unlikely that consumers, who intentionally seek out Mejuri products for their accessible price points, would be likely to confuse Mejuri's Thin Croissant Dôme and Thin Dôme Rings with Yurman's Pure Form® Stack Rings.  Mejuri caters to a modern, typically younger, generation of women who are seeking high-quality, but affordable, fine jewelry.  Given the steep prices of its products, upon information and belief, Yurman caters to a more traditional jewelry consumer, often a man purchasing a gift for his spouse, partner, or girlfriend, who is typically older.  Therefore, there is little overlap in the purchasers of the parties' products, and therefore little opportunity for confusion.

87.          As already alleged, further reducing the likelihood of confusion is the sophistication of Mejuri's consumers who are deliberative about their jewelry purchases, and the fact that Yurman's Pure Form® Stack Rings and Mejuri's Thin Croissant Dôme and Thin Dôme Ring are sold through distinct channels.  While Yurman sells its products to department stores and third-party retailers, Mejuri only sells its products via its own branded website or retail stores.  As

---

[104] *See* DAVID YURMAN, *Pure Form® Stack Rings* https://www.davidyurman.com/products/womens/womens-rings/pure-form-stack-rings-in-18k-gold-r13036-88.pdp html?swatchCode=R13036%2088ZZZ (last visited Mar. 3, 2022).

[105] *See* MEJURI, *Thin Croissant Dôme Ring*, https://mejuri.com/shop/products/thin-croissant-dome-ring (last visited Mar. 3, 2022); MEJURI, *Thin Dôme Ring*, https://mejuri.com/shop/products/thin-dome-ring (last visited Mar. 3, 2022).

a result, it is highly unlikely that consumers would confuse Mejuri's Thin Croissant Dôme Ring and Thin Dôme Rings with Yurman's Pure Form® Stack Rings since Yurman's products are never sold alongside Mejuri's products at the point of purchase. *See* ¶ 76–77.

88.        Further, as described above, Mejuri adopted the Thin Croissant Dôme and Thin Dôme Ring in good faith, as a part of an independent and rigorous design process that was in no way influenced by Yurman's products.  Mejuri's Thin Croissant Dôme and Thin Dôme Ring are also composed of the highest quality materials and subject to the same rigorous quality control that all of Mejuri's products undergo.

89.        Considering all of these factors, consumers are not likely to confuse Mejuri's Thin Croissant Dôme and Thin Dôme Rings with Yurman's Pure Form® Stack Rings.

### 3. There is No Likelihood of Confusion Between Mejuri's Croissant Dôme Hoops and Yurman's Cable Classics Earrings

90.        Consumers are not likely to confuse Mejuri's Croissant Dôme Hoops with Yurman's Cable Classics Earrings.

91.        Yurman fails to allege any actual confusion between its Cable Classics Earrings and Mejuri's Croissant Dôme Hoops.

92.        Mejuri's Croissant Dôme Hoops are also easily distinguishable from Yurman's Cable Classics Earrings.  The Croissant Dôme Hoops are again characterized by a pattern with recessed grooves and tapered volume down the sides that graduate from wide to narrow from top to bottom, much like a croissant or risen loaf of bread.  By contrast, Yurman's Cable Classics Earrings have a minimal taper, have the same thickness all the way around, are patterned like tightly twisted cables, and have a stark flat, platformed beginning and ending to the hoop.  Additionally, unlike Yurman's Cable Classics Earrings, Mejuri's Croissant Dôme Hoops are hollowed in the interior.




Mejuri's Croissant Dôme Hoops                Yurman's Cable Classic Earrings




Mejuri's Croissant Dôme Hoops                Yurman's Cable Classic Earrings

93.     Given the many differences in the appearance of the Cable Classics Earrings and Mejuri's accused Croissant Dôme Hoops, consumers are unlikely to confuse them with one another, especially in view of the many other similar twist earring designs available in the market. *See* ¶ 50. The existence of these other twist designs confirms the weak (at best) nature of Yurman's alleged Cable Classics Earrings trade dress and undercuts any claim that consumers seeing Mejuri's Croissant Dôme Hoops are going to believe that Yurman is the source of those designs or that Mejuri is authorized by or affiliated with Yurman.

94.     Confusion is also highly unlikely because of the distinctly different target audiences for the parties' products. Yurman's Cable Classics Earrings retail for $300 (sterling

silver).[106]  In contrast, as a result of Mejuri's innovative model, as described above, it is able to sell its high-quality Croissant Dôme Hoops at a substantially lower price: $75 (Gold Vermeil) and $65 (Sterling Silver)[107].  Consequently, it is unlikely that consumers, who intentionally seek out Mejuri products for their accessible price points, would be likely to confuse Mejuri's Croissant Dôme Hoops with Yurman's Cable Classics.  As alleged, Mejuri caters to a modern, typically younger, generation of women who are seeking high-quality, but affordable, fine jewelry.  Given the steep prices of its products, upon information and belief, Yurman caters to a more traditional jewelry consumer, often a man purchasing a gift for his spouse, partner, or girlfriend, who is typically older.  Therefore, there is little overlap in the purchasers of the parties' products, and therefore little opportunity for confusion.

95.     As already alleged, further reducing the likelihood of confusion is the sophistication of Mejuri's consumers who are deliberate about their jewelry purchases, and the fact that Yurman's Cable Classics Earrings and Mejuri's Croissant Dôme Hoops are sold through distinct channels.  While Yurman sells its products to department stores and third-party retailers, Mejuri only sells its products via its own branded website or retail stores.  As a result, it is highly unlikely that consumers would confuse Mejuri's Croissant Dôme Hoops with Yurman's Cable Classics Earrings since Yurman's products are never sold alongside Mejuri's products at the point of purchase.  *See* ¶¶ 76–77.

96.     Further, as described above, Mejuri adopted the Croissant Dôme Hoops in good faith, as a part of an independent and rigorous design process that was in no way influenced

---

[106] *See* DAVID YURMAN, *Cable Classics Earrings*, https://www.davidyurman.com/products/womens/womens-earrings/cable-classics-earrings-e11493-ss.pdp html?swatchCode=E11493%20SSZZZ (last visited Mar. 3, 2022).

[107] *See* MEJURI, *Croissant Dôme Hoops*, https://mejuri.com/shop/products/croissant-dome-hoops-silver (last visited Mar. 3, 2022).

by Yurman's products.  Mejuri's Croissant Dôme Hoops are also composed of the highest quality materials and subject to the same rigorous quality control that all of Mejuri's products undergo.

97.        Considering all of these factors, consumers are not likely to confuse Mejuri's Croissant Dôme Hoops with Yurman's Cable Classics Earrings.

### D.  Mejuri Has Never Sought to Associate Itself with Yurman

98.        Yurman's Complaint falsely alleges that Mejuri's ethos, marketing, and advertising creates an association with Yurman thereby confusing consumers and diluting the supposed distinctiveness of the Alleged Trade Dress.  Mejuri has never sought to associate itself with Yurman.  Indeed, Mejuri's entire strategy and mission is to differentiate itself from other companies in the jewelry industry.  Thus, Yurman's suggestion that Mejuri has sought to copy its marketing and promotion strategy lacks any factual basis.

99.        Yurman alleges that it has been at the forefront of female empowerment and that Yurman has led the way in promoting the idea that women should purchase jewelry for themselves.[108]  But female empowerment is not something any one company owns.  Any similarities that Mejuri's mission may have with Yurman's should be celebrated as furthering women's empowerment.  Moreover, Mejuri's mission is not only focused on empowering women, but also mutual uplift, community, sustainability, and accessibility, none of which forms a part of Yurman's claimed "ethos."

100.       Yurman claims that Mejuri has attempted to create an association with Yurman by promoting "stacking."[109]  But Yurman has no right to claim ownership of stacking, just like it has no right to claim ownership of all twist designs.  Stacking in fine jewelry is a timeless

---

[108] Compl. ¶ 2.
[109] Compl. ¶ 94.

trend that has been used by many other fine jewelry brands.  Just a few examples of the use of stacking in the fine jewelry marketplace can be seen below. [110]



**Tiffany & Co, Instagram**

---

[110] *See, e.g.,* Tiffany & Co, INSTAGRAM, https://www.instagram.com/p/ByiB2o8F1h_/ (last visited Mar. 3, 2022); TIFFANY & CO, *Tiffany T Bracelets*, https://www.tiffany.com/jewelry/shop/bracelets/tiffany-t/ (last visited Mar. 3, 2022); Bulgari, Instagram, https://www.instagram.com/p/B9CTkILI5w1/ (last visited Mar. 3, 2022); Cartier, INSTAGRAM, https://www.instagram.com/p/BZ31NDCFfLd/ (last visited Mar. 3, 2022); STEPHANIE GOTTLIEB, https://stephaniegottlieb.com/ (last visited Mar. 3, 2022).

– 55 –



**Tiffany & Co.**



**Bulgari, Instagram**



**Cartier, Instagram**



**Stephanie Gottlieb**

101.     Further, consumers by no means associate stacking exclusively with Yurman, and many industry publications promote stacking of pieces from multiple different jewelry brands

as shown below.  Consequently, Yurman's assertion that "stacking has been closely associated with Yurman for many years" is wholly without merit.[111]



**Vogue**[112]



**Style**[113]

---

[111] *See* Compl. ¶ 95.

[112] Celine Yap, *This Mother's Day, level up your jewellery stack with the season's latest bracelets*, VOGUE, https://vogue.sg/mothers-day-jewellery-bracelets-stacking-cartier-tiffany-bulgari/ (last visited Mar. 3, 2022).

[113] Jasmine Tay, *The latest stacking rings to amp up your Jewellery Game*, STYLE, https://www.lifestyleasia.com/sg/style/jewellery/the-latest-stacking-rings-to-amp-up-your-jewellery-game/ (last visited Mar. 3, 2022).

102.     Yurman further claims that in an "egregious example" of copying,[114] Mejuri tried to associate itself with Yurman by posting an Instagram image of supermodel Emily Didonato on September 24, 2021 wearing Mejuri's jewelry eleven days after Yurman posted a picture of Ms. Didonato wearing Yurman's jewelry on Twitter.[115]  Mejuri, however, had established a working relationship with Ms. Didonato well before September 24, 2021, and Ms. Didonato posted photos wearing Mejuri jewelry on her Instagram numerous times before September 24, 2021..[116] Yurman's hyperbolic allegations of "egregious[ness]" are thus unfounded.



**Post from Emily Didonato on March 15, 2021**

---

[114] *See* Compl. ¶ 98.
[115] Compl. ¶ 100.
[116] *See, e.g.,* Emily Didonato, INSTAGRAM, https://www.instagram.com/p/CMciEHvJZ5m/ (last visited Mar. 3, 2022); Emily Didonato, INSTAGRAM, https://www.instagram.com/p/CLzeDQ_JVTe/ (last visited Mar. 3, 2022).



**Post from Emily Didonato on February 27, 2021**

103.     Yurman's attempts to conjure up a strategy by Mejuri to copy Yurman are baseless.  Mejuri has no desire to be associated with Yurman or its products.

### E. Mejuri Does Not Dilute Yurman's Alleged Trade Dress Under New York State Law

#### 1. Mejuri's Croissant Dôme Cuff Bracelet does not Dilute Yurman's Pure Form® Cable Bracelet by Blurring

104.     As an initial matter, Mejuri's Croissant Dôme Bracelet does not dilute Yurman's Pure Form® Cable Bracelet because Mejuri discontinued sales of its Croissant Dôme Bracelet product in October 2020.

105.     Further, Mejuri's Croissant Dôme Cuff Bracelet does not dilute Yurman's Pure Form® Cable Bracelet by blurring.

– 61 –

106.    The Pure Form® Cable Bracelet is not inherently distinctive, because the intrinsic nature of the alleged trade dress does not serve to identify Yurman. The Pure Form® Cable Bracelet lacks acquired distinctiveness, or secondary meaning, because in the minds of the public, the primary significance of the design is not to identify the source of the Pure Form® Cable Bracelet as Yurman. *See* ¶¶ 34–41.

107.    Mejuri's Croissant Dôme Cuff Bracelet is not likely to dilute any alleged distinctiveness of The Pure Form® Cable Bracelet by blurring. As set forth above, Mejuri's Croissant Dôme Cuff Bracelet is readily distinguishable from Yurman's Alleged Trade Dress in the Pure Form® Cable Bracelet. *See* ¶¶ 72–73. Mejuri has taken no actions to associate its designs with Yurman and is itself a well-known and distinct brand that has grown rapidly since its founding in 2015. *See* ¶¶ 98–103.

108.    As already alleged, Mejuri's consumers are sophisticated and intentional about their jewelry purchases and deliberative in which companies they choose to buy from, making it unlikely that Mejuri's Croissant Dôme Cuff Bracelet will blur any alleged distinctiveness of the Pure Form® Cable Bracelet. Further, Mejuri adopted the Croissant Dôme Cuff Bracelet in good faith, as a part of an independent and rigorous design process that was in no way intended to capitalize on any purported goodwill garnered by Yurman. Consequently, no actions taken by Mejuri will cause Yurman's Alleged Trade Dress in the Pure Form® Cable Bracelet to lose its purported ability to serve as a unique identifier of Yurman's products.

**2. Mejuri's Croissant Dôme Cuff Bracelet does not Dilute Yurman's Pure Form® Cable Bracelet by Tarnishment**

109.    Moreover, Mejuri's Croissant Dôme Cuff Bracelet is not likely to dilute any alleged distinctiveness of the Pure Form® Cable Bracelet by tarnishment.

110.      In its Complaint, Yurman alleges that Mejuri's Croissant Dôme Cuff Bracelet is made of an inferior composition and possesses a hollowed-out interior thereby tarnishing Yurman's Pure Form® Cable Bracelet.[117]  First, all Mejuri jewelry, including the Croissant Dôme Cuff Bracelet use the highest quality materials.  As set forth above, Mejuri adheres to strict quality control standards to ensure that its products are defect-free, and takes immediate action to rectify any issues that arise with the quality of any of its products.  The Croissant Dôme Cuff Bracelet is composed of gold vermeil.  Yurman's Complaint criticizes this composition, quoting Mejuri's own product description for the Croissant Dôme Cuff Bracelet which states, "Not to be confused with regular gold plating, our vermeil is a thick layer of 18k solid gold on sterling silver."[118]  Yurman ignores the remainder of Mejuri's product description which states, "vermeil is a thick layer of 18k solid gold on sterling silver *meaning it will last longer. You get the look & feel of gold jewelry at a fraction of the price*." [119]  The high quality of Mejuri's Croissant Dôme Cuff Bracelet can be seen in one of the many positive consumer reviews for the product.  *See* ¶ 28.

111.      Second, Mejuri designers intentionally hollowed the interior of the Croissant Dôme Cuff Bracelet to save on manufacturing costs and to make the pieces lighter and more comfortable to wear, without compromising on the design or materials.  Those cost savings are then passed on to the consumer, promoting Mejuri's goal of creating affordable, everyday jewelry, while still maintaining the high quality expected of Mejuri's products.  Thus, Mejuri's Croissant Dôme Cuff Bracelet was thoughtfully designed to combine quality with affordability.  As such,

---

[117] Compl. ¶¶ 82–84.
[118] Compl. ¶ 82 & n.32.
[119] MEJURI, *Croissant Dôme Cuff Bracelet*, https://mejuri.com/shop/products/croissant-dome-cuff-bracelet (last visited Mar. 3, 2022) (emphasis added).

Mejuri's Croissant Dôme Cuff Bracelet is not likely to dilute any alleged distinctiveness of The Pure Form® Cable Bracelet by tarnishment.

### 3. Mejuri's Thin Croissant Dôme Ring and Thin Dome Ring Do Not Dilute Yurman's Pure Form® Stack Rings by Blurring

112.    Mejuri's Thin Croissant Dôme Ring and Thin Dôme Ring do not dilute Yurman's Pure Form® Stack Rings by Blurring.

113.    First, The Pure Form® Stack Rings are not inherently distinctive, because the intrinsic nature of the alleged trade dress does not serve to identify Yurman.  Further, the Pure Form® Stack Rings lack acquired distinctiveness, or secondary meaning, because in the minds of the public, the primary significance of the design is not to identify the source of the Pure Form® Stack Rings as Yurman.  *See* ¶¶ 42–48.  In fact, the existence of countless other twist and smooth designs for rings in the jewelry marketplace, as well as the stacking of those rings confirms the weak (at best) nature of Yurman's Pure Form® Stack Rings alleged trade dress, thereby defeating Yurman's claim of dilution against Mejuri.

114.    Mejuri's Thin Croissant Dôme Ring and Thin Dôme Ring are not likely to dilute any alleged distinctiveness of The Pure Form® Stack Rings by blurring.  As already alleged, Mejuri's Thin Croissant Dôme Ring and Thin Dôme Ring are readily distinguishable from Yurman's alleged trade dress in the Pure Form® Stack Rings.  *See* ¶ 83.  Mejuri has taken no further actions to associate itself with Yurman and is itself a well-known and distinct brand that has grown rapidly since its founding in 2015.  *See* ¶¶ 98–103.  In addition, as already alleged, Mejuri's consumers are sophisticated and intentional about their jewelry purchases and deliberative in which companies they choose to buy from making it unlikely that Mejuri's Thin Croissant Dôme Ring and Thin Dôme Rings will blur any alleged distinctiveness of The Pure Form® Stack Rings.  Further, Mejuri adopted the Thin Croissant Dôme Ring and Thin Dôme Ring

in good faith, as a part of an independent and rigorous design process that was in no way designed to capitalize on any purported goodwill garnered by Yurman.  Consequently, no actions taken by Mejuri will cause Yurman's alleged trade dress in The Pure Form® Stack Rings to lose its purported ability to serve as a unique identifier of Yurman's products.

### 4.   Mejuri's Thin Croissant Dôme Ring and Thin Dome Ring Do Not Dilute Yurman's Pure Form® Stack Rings by Tarnishment

115.    Moreover, Mejuri's Thin Croissant Dôme Ring and Thin Dôme Ring are not likely to dilute any alleged distinctiveness of The Pure Form® Stack Rings by tarnishment.  In its Complaint, Yurman alleges that Mejuri's Thin Croissant Dôme Ring and Thin Dôme Ring are easily tarnished even without any wear and tear and possess a hollowed-out interior thereby allegedly tarnishing Yurman's Pure Form® Stack Rings.[120]  First, all Mejuri jewelry, including the Thin Croissant Dôme Ring and Thin Dôme Ring use the highest quality materials.  Second, as described above, the hollowed-out design was intentionally selected to reduce the cost of materials, and also to make the products lighter and more comfortable to wear.  *See* ¶ 73.  The high quality of Mejuri's Thin Croissant Dôme Ring can be seen in the many positive consumer reviews for the products.  *See* ¶ 28.

116.    Mejuri's Thin Croissant Dôme Ring and Thin Dôme Ring were thoughtfully designed to combine quality with affordability.  As such, Mejuri's Thin Croissant Dôme Ring and Thin Dôme Ring are not likely to dilute any alleged distinctiveness of the Pure Form® Stack Rings by tarnishment.

---

[120] Compl. ¶¶ 82–84.

### 5. Mejuri's Croissant Dôme Hoops Do Not Dilute Yurman's Cable Classics Earrings by Blurring or Tarnishment

117.     Mejuri's Croissant Dôme Hoops do not dilute Yurman's Cable Classics Earrings by blurring.

118.     First, as already alleged, the Cable Classics Earrings are not inherently distinctive, because the intrinsic nature of the alleged trade dress does not serve to identify Yurman.   Further, the Cable Classics Earrings lack acquired distinctiveness, or secondary meaning, because in the minds of the public, the primary significance of the design is not to identify the source of the Cable Classics Earrings as Yurman.  *See* ¶¶ 49–55.  In fact, the existence of countless other twist designs confirms the weak (at best) nature of Yurman's Cable Classics Earrings trade dress, thereby defeating Yurman's claim of dilution against Mejuri.

119.     Further, Mejuri's Croissant Dôme Hoops are not likely to dilute any alleged distinctiveness of the Cable Classics Earrings by blurring.  As already alleged, Mejuri's Croissant Dôme Hoops are readily distinguishable from Yurman's Alleged Trade Dress in the Cable Classics Earrings.  *See* ¶ 92.  Mejuri has taken no further actions to associate itself with Yurman and is itself a well-known and distinct brand that has grown rapidly since its founding in 2015.  *See* ¶¶ 98–103.  Likewise, as already alleged, Mejuri's consumers are sophisticated and intentional about their jewelry purchases and deliberative in which companies they choose to buy from making it unlikely that Mejuri's Croissant Dôme Hoops will blur any alleged distinctiveness of the Cable Classics Earrings.  Further, Mejuri adopted the Croissant Dôme Hoops in good faith, as a part of an independent and rigorous design process that was in no way intended to capitalize on any purported goodwill garnered by Yurman.  Consequently, no actions taken by Mejuri will cause Yurman's alleged trade dress in the Cable Classics Earrings to lose its purported ability to serve as a unique identifier of Yurman's products.

### 6. Mejuri's Croissant Dôme Hoops Do Not Dilute Yurman's Cable Classics Earrings by Tarnishment

120.     Moreover, Mejuri's Croissant Dôme Hoops are not likely to dilute any alleged distinctiveness of Cable Classics Earrings by tarnishment.  In its Complaint, Yurman alleges that Mejuri's Croissant Dôme Hoops are easily tarnished even without any wear and tear and possess a hollowed-out interior thereby allegedly tarnishing Yurman's Cable Classics Earrings.[121]  First, all Mejuri jewelry, including the Croissant Dôme Hoops use the highest quality materials.  Second, as described above, the hollowed-out design was intentionally selected to reduce the cost of materials, and also to make the products lighter and more comfortable to wear.  *See* ¶ 73.  The high quality of Mejuri's Croissant Dôme Hoops can be seen in one of the many positive consumer reviews for the product.  *See* ¶ 28.

121.     Mejuri's Croissant Dôme Hoops were thoughtfully designed to combine quality with affordability.  As such, Mejuri's Croissant Dôme Hoops are not likely to dilute any alleged distinctiveness of the Cable Classics Earrings by tarnishment.

### FIRST COUNTERCLAIM
### (DECLARATORY JUDGMENT OF NO PROTECTABLE TRADE DRESS)

122.     Mejuri repeats and realleges each of the allegations above as if fully set forth herein.

123.     This is an action for declaratory judgment against Yurman pursuant to 28 U.S.C. §§ 2201 and 2202.

124.     Yurman alleges that it owns trademark rights in the Alleged Trade Dress and that Mejuri infringes those rights.

---

[121] Compl. ¶¶ 82–84.

125.     The Alleged Trade Dress is not a valid trademark because it lacks secondary meaning, and therefore is not distinctive.

126.     The Alleged Trade Dress is not a valid trademark because it is aesthetically functional.

127.     Because the Alleged Trade Dress is not distinctive and because it is aesthetically functional, Plaintiff's Alleged Trade Dress is not protectable under either federal or New York State Law.

128.     An actual, substantial, present, and justiciable controversy currently exists between Mejuri and Yurman with respect to whether Yurman has any protectable trade dress rights in the Alleged Trade Dress.

129.     Mejuri seeks a declaratory judgment from this Court that the Alleged Trade Dress is not protectable trade dress and that Yurman has no trade dress rights in the Alleged Trade Dress.

## SECOND COUNTERCLAIM
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

130.     Mejuri repeats and realleges each of the allegations above as if fully set forth herein.

131.     This is an action for declaratory judgment against Yurman pursuant to 28 U.S.C. §§ 2201 and 2202.

132.     In this action, Yurman alleges infringement of the Alleged Trade Dress by Mejuri.

133.     Mejuri has not infringed the Alleged Trade Dress because consumers are not likely to confuse Mejuri's Croissant Dôme Bracelet or Croissant Dôme Cuff Bracelet with Yurman's Pure Form® Cable Bracelet and because consumers are not likely to be mistaken or

deceived as to the source or origin of Mejuri's Croissant Dôme Bracelet or Croissant Dôme Cuff Bracelet or the affiliation, connection, sponsorship, or association of Mejuri's Croissant Dôme Bracelet or Croissant Dôme Cuff Bracelet with Yurman.

134.     Mejuri has not infringed the Alleged Trade Dress because consumers are not likely to confuse Mejuri's Thin Croissant Dôme Ring or Thin Dôme Ring with Yurman's Pure Form® Stack Rings and because consumers are not likely to be mistaken or deceived as to the source or origin of Mejuri's Thin Croissant Dôme Ring or Thin Dôme Ring or the affiliation, connection, sponsorship, or association of Mejuri's Thin Croissant Dôme Ring or Thin Dôme Ring with Yurman.

135.     Mejuri has not infringed the Alleged Trade Dress because consumers are not likely to confuse Mejuri's Croissant Dôme Hoops with Yurman's Cable Classics Earrings and because consumers are not likely to be mistaken or deceived as to the source or origin of Mejuri's Croissant Dôme Hoops or the affiliation, connection, sponsorship, or association of Mejuri's Croissant Dôme Hoops with Yurman.

136.     An actual, substantial, present, and justiciable controversy currently exists between Mejuri and Yurman with respect to whether Mejuri has infringed Yurman's rights, if any, in the Alleged Trade Dress.

137.     Mejuri seeks a declaratory judgment from this Court that it has not infringed or violated, and does not infringe or violate, any of Yurman's rights with respect to the Alleged Trade Dress and does not violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### THIRD COUNTERCLAIM
### (DECLARATORY JUDGMENT OF NO DILUTION UNDER NEW YORK GENERAL BUSINESS LAW § 360-l)

138.     Mejuri repeats and realleges each of the allegations above as if fully set forth herein.

139.     This is an action for declaratory judgment against Yurman pursuant to 28 U.S.C. §§ 2201 and 2202.

140.     In this action, Yurman alleges that Mejuri's use of the Alleged Trade Dress is likely to cause dilution, by blurring the product identification of Yurman's Alleged Trade Dress, and by tarnishing Yurman's Alleged Trade Dress in violation of New York General Business Law § 360-l.

141.     Mejuri has not diluted any of Yurman's rights with respect to the Alleged Trade Dress because Mejuri's products have not, and do not blur the Alleged Trade Dress, and have not and do not tarnish the Alleged Trade Dress in violation of New York General Business Law § 360-l.

142.     An actual, substantial, present, and justiciable controversy currently exists between Mejuri and Yurman with respect to whether Mejuri has diluted Yurman's rights, if any, in the Alleged Trade Dress in violation of New York General Business Law § 360-l.

143.     Mejuri seeks a declaratory judgment from this Court that it has not diluted or violated, and does not dilute or violate, any of Yurman's rights with respect to the Alleged Trade Dress and does not violate New York General Business Law § 360-l.

### PRAYER FOR RELIEF

WHEREFORE, Mejuri prays for the following relief, declaration, and judgment:

a)  Dismiss Yurman's Complaint with prejudice;

b)  Issue an order declaring that Yurman's Alleged Trade Dress is not protectable trade dress;

c)  Issue an order declaring that Mejuri has not infringed Yurman's Alleged Trade Dress;

d)  Issue an order stating that Mejuri has not caused any injury to Yurman's business reputation or dilution of the distinctive quality of any trade dress owned by Plaintiffs under Section 360-l of N.Y. Gen. Bus. Law;

e)  Award Mejuri its costs and reasonable attorneys' fees incurred in this action, including by declaring that this case is exceptional, pursuant to 35 U.S.C. § 285, awarding fees pursuant to 28 U.S.C. § 1927, Rule 11, or this Court's inherent powers;

f)  Such other and further relief as the Court may deem just and proper.

## ANSWER TO THE COMPLAINT

## NATURE OF THE ACTION[1]

1.          Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 1 and therefore denies those allegations.

2.          Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 2 and therefore denies those allegations.

3.          Mejuri denies that Yurman has intellectual property rights, including trade dress protection, in the Pure Form® Cable Bracelet, Pure Form® Stack Rings, and Cable Classics Earrings.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 3 and therefore denies those allegations.

4.          Mejuri denies that it has copied Yurman or its jewelry designs, messaging, or company ethos.  To the extent the allegations in Paragraph 4 relate to third party entities, Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 4 and therefore denies those allegations.

5.          Mejuri admits that Mejuri was founded by Noura Sakkijha and Majed Masad.  Mejuri admits that Ms. Sakkijha and Mr. Masad previously worked in finance.  As explained in Mejuri's Counterclaims, part of Mejuri's mission since its founding has been to promote women's empowerment, including by offering a direct-to-consumer model enabling women to purchase fine jewelry for themselves.  *See* Counterclaims ¶¶ 18–22.  The portions of the podcast and articles quoted in Paragraph 5 speak for themselves as to form and content.  Mejuri denies the remaining allegations of Paragraph 5.

---

[1] Mejuri's inclusion of the headings from Yurman's Complaint is for purposes of convenience only and should not be construed as an admission or concession regarding the accuracy, implications, or relevance of those headings.

6.        Denied.

7.        Denied.

8.        Denied.

9.        The article and website cited in Paragraph 9 speak for themselves as to form and content.  Mejuri denies the remaining allegations in Paragraph 9.

10.        The website cited in Paragraph 10 speaks for itself as to form and content. Mejuri denies the remaining allegations in Paragraph 10.

**PARTIES**

11.        Mejuri admits upon information and belief that Plaintiff David Yurman Enterprises LLC is organized and exists under the laws of the State of Delaware with its principal place of business located at 24 Vestry Street, New York, NY, United States, 10013.  Mejuri otherwise lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 11 and therefore denies those allegations.

12.        Mejuri admits upon information and belief that Plaintiff David Yurman IP LLC is organized and exists under the laws of the State of Delaware with its principal place of business located at 24 Vestry Street, New York, NY, United States, 10013.  Mejuri otherwise lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 12 and therefore denies those allegations.

13.        Mejuri admits upon information and belief that Plaintiff Yurman Retail North America LLC is organized and exists under the laws of the State of Delaware with its principal place of business located at 24 Vestry Street, New York, NY, United States, 10013.  Mejuri otherwise lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 13 and therefore denies those allegations.

14.        Admitted.

15.        Admitted.

## JURISDICTION AND VENUE

16.        Paragraph 16 consists of conclusions of law to which no response is required.

17.        Mejuri admits that it owns and operates a store located at 43 Spring Street, New York, NY 10012.  The remaining allegations in Paragraph 17 consist of conclusions of law to which no response is required.

18.        Paragraph 18 consists of conclusions of law to which no response is required.

## FACTUAL ALLEGATIONS

### The Fame and Notoriety of David Yurman Jewelry Designs

19.        Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 19 and therefore denies those allegations.

20.        Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 20 and therefore denies those allegations.

21.        The book cited in Paragraph 21 speaks for itself as to form and content. Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 21 and therefore denies those allegations.

22.        The book cited in Paragraph 22 speaks for itself as to form and content. Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 22 and therefore denies those allegations.

23.        Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 23 and therefore denies those allegations.

24.     The articles cited in Paragraph 24 speaks for themselves as to form and content.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 24 and therefore denies those allegations.

25.     The book cited in Paragraph 25 speaks for itself as to form and content.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 25 and therefore denies those allegations.

**The Yurman Collections Copied by Mejuri**

26.     Denied.

27.     The website purportedly reproduced in Paragraph 27 speaks for itself as to form and content.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 27 and therefore denies those allegations.

28.     The website purportedly reproduced in Paragraph 28 speaks for itself as to form and content.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 28 and therefore denies those allegations.

29.     The website purportedly reproduced in Paragraph 29 speaks for itself as to form and content.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 29 and therefore denies those allegations.

30.     The website purportedly reproduced in Paragraph 30 speaks for itself as to form and content.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 30 and therefore denies those allegations.

31.     Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 31 and therefore denies those allegations.

32.        Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 32 and therefore denies those allegations.

33.        Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 33 and therefore denies those allegations.

**The Yurman Trade Dress**

34.        Denied.

Pure Form® Cable Bracelet

35.        Denied.

36.        Denied.

37.        Denied.

38.        Denied.

39.        Mejuri denies that Yurman has trade dress rights in the Pure Form® Cable Bracelet product.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 39 and therefore denies those allegations.

Pure Form® Stack Rings

40.        Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 40 and therefore denies those allegations.

41.        Denied.

42.        Denied.

43.        Denied.

44.        Mejuri denies that Yurman has trade dress rights in the Pure Form® Stack Rings product.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 44 and therefore denies those allegations.

Cable Classics Earrings

45.     Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 45 and therefore denies those allegations.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Mejuri denies that Yurman has trade dress rights in the Pure Form® Cable Classic Earrings product.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 49 and therefore denies those allegations.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Mejuri denies that Yurman has trade dress rights in the Pure Form® Cable Bracelet, Pure Form® Stack Rings, and Cable Classics Earrings products.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 54 and therefore denies those allegations.

55.     Mejuri denies that Yurman has trade dress rights in the Pure Form® Cable Bracelet, Pure Form® Stack Rings, and Cable Classics Earrings products.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 55 and therefore denies those allegations.

56.     Mejuri denies that Yurman has trade dress rights in the Pure Form® Cable Bracelet, Pure Form® Stack Rings, and Cable Classics Earrings products.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 56 and therefore denies those allegations.

57.     Mejuri denies that Yurman has trade dress rights in the Pure Form® Cable Bracelet, Pure Form® Stack Rings, and Cable Classics Earrings products.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 57 and therefore denies those allegations.

58.     Denied.

59.     Mejuri denies the allegations in Paragraph 59 to the extent they relate to Mejuri.  To the extent the allegations in Paragraph 59 relate to third party entities, Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 59 and therefore denies those allegations.

**Mejuri's Infringement of the Yurman Trade Dress**

60.     Mejuri admits that Mejuri engages in the design, distribution, marketing, and sale of jewelry.  Mejuri admits that Mejuri's retail stores are located nationwide, including within the Southern District of New York.  Mejuri admits that it sells products on its official website, www.mejuri.com.  Mejuri denies that it engages in copying.  Mejuri denies the remaining allegations of paragraph 60.

61.     Mejuri admits that Mejuri was founded by Noura Sakkijha and Majed Masad, who are married.  Mejuri admits that Noura Sakkijha and Majed Masad have worked in finance. Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 61 and therefore denies those allegations.

62.         Mejuri admits that, since its founding, Mejuri has emphasized female empowerment.  *See* Counterclaims ¶¶ 18–22.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 62 and therefore denies those allegations.

63.         Mejuri admits that Mejuri offers fine jewelry that is accessible.  *See* Counterclaims ¶ 20.  The portions of the articles quoted in Paragraph 63 speak for themselves.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 63 and therefore denies those allegations.

64.         Denied.

65.         Denied.

66.         Denied.

67.         Denied.

68.         Denied.

69.         Denied.

70.         Denied.

71.         Denied.

72.         Denied.

73.         Denied.

74.         Mejuri admits that it has not entered into any license agreements with Plaintiffs, nor has Yurman offered any such license.

75.         Denied.

76.         Denied.

77.         Denied.

78.      Denied.

79.      Denied.

80.      Mejuri admits that Mejuri sells its Croissant Dôme Cuff Bracelet product, Thin Croissant Dôme Ring product, Thin Dôme Ring product, and Croissant Dôme Hoops at its retail stores and on its official website, www.mejuri.com.  Mejuri denies that any of its products infringe Yurman's Alleged Trade Dress.  Mejuri denies the remaining allegations of Paragraph 80.

81.      Denied.

82.      Denied.

83.      The portions of the website pages purportedly reproduced in Paragraph 83, when put in context of the full websites, speak for themselves.  Mejuri denies that any of its products infringe Yurman's Alleged Trade Dress or are of inferior quality.  Mejuri denies the remaining allegations of Paragraph 83.

84.      Mejuri admits that the Thin Croissant Dôme Ring, Thin Dôme Ring, Croissant Dôme Cuff Bracelet, and Croissant Dôme Hoops have a hollowed-out interior, which reduces manufacturing costs and makes the products lighter and more wearable, without compromising on quality.  Those cost savings are then passed on to the consumer, promoting Mejuri's goal of creating affordable fine jewelry for everyday wear.  *See* Counterclaims ¶ 73. Mejuri denies any remaining allegations of Paragraph 84.

85.      Mejuri denies that any of its products are of inferior quality.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations related to Yurman's Products in Paragraph 85 and therefore denies those allegations.

86.      Denied.

**Mejuri's Copycat Advertising Campaigns, Including for the Infringing Products**

87.     Denied.

88.     Denied.

89.     Mejuri admits that Mejuri has used large replicas of its Thin Croissant Dôme Ring in advertising materials.  Mejuri denies that any of its products infringe Yurman's Alleged Trade Dress.  Mejuri denies the remaining allegations of Paragraph 89.

90.     Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 90 and therefore denies those allegations.

91.     The website purportedly reproduced in Paragraph 91 speaks for itself as to form and content.  Mejuri denies the remaining allegations of Paragraph 91.

92.     Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 92 and therefore denies those allegations.

93.     Mejuri admits that in March 2021 it announced that it had entered into a partnership with the lifestyle brand Goop.  To the extent the allegations in Paragraph 93 imply that jewelry stacking is exclusively or uniquely associated with Plaintiffs, Mejuri denies these allegations.  *See* Counterclaims ¶¶ 100–101.  The website purportedly reproduced in Paragraph 93 speaks for itself as to form and content.  Mejuri denies the remaining allegations of Paragraph 93.

94.     The website purportedly quoted or reproduced in Paragraph 94 speaks for itself.  To the extent the allegations in Paragraph 94 imply that jewelry stacking is exclusively or uniquely associated with Plaintiffs, Mejuri denies these allegations.  *See* Counterclaims ¶¶ 100–101.  Mejuri denies the remaining allegations of Paragraph 94.

95.     Denied.  *See* Counterclaims ¶ 100–101.

96.     Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 96 and therefore denies those allegations.

97.     Denied.

98.     Mejuri admits that in September 2021 Mejuri worked with Emily Didonato to promote its products.  In fact, Mejuri had worked with Ms. Didonato long before September 2021.  *See* Counterclaims ¶ 102.  Mejuri denies the remaining allegations of Paragraph 98.

99.     The website page purportedly reproduced in Paragraph 99 speaks for itself as to form and content.  Mejuri lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in Paragraph 99 and therefore denies those allegations.

100.     Mejuri admits that it has worked with Emily Didonato to promote its products both before as well as in September 2021.  *See* Counterclaims ¶ 102.  The website purportedly reproduced in Paragraph 100 speaks for itself.  Mejuri denies the remaining allegations of Paragraph 100.

101.     Mejuri admits that Mejuri posted a video to YouTube featuring Emily Didonato and Mejuri's products.  Mejuri denies that Mejuri's relationship with Emily Didonato conveys an association or affiliation with Yurman.  Indeed, Mejuri established a relationship with Emily Didonato well before September 2021.  *See* Counterclaims ¶ 102.  Mejuri denies the remaining allegations of Paragraph 101.

## COUNT I
## INFRINGEMENT OF THE YURMAN TRADE DRESS
(15 U.S.C. § 1125(a))

102.     Mejuri incorporates by reference its responses to Paragraphs 1 through 101 as though fully set forth below.

103.     Denied.

104.        Denied.

105.        Denied.

106.        Denied.

107.        Denied.

108.        Denied.

109.        Denied.

110.        Denied.

111.        Denied.

112.        Denied.

## COUNT II
## STATE LAW DILUTION
(New York General Business Law § 360-1)

113.        Mejuri incorporates by reference its responses to Paragraphs 1 through 112

as though fully set forth below.

114.        Denied.

115.        Denied.

116.        Denied.

117.        Denied.

118.        Denied.

119.        Denied.

120.        Denied.

121.        Denied.

122.        Denied.

## RESPONSE TO PRAYER FOR JUDGMENT AND RELIEF

The remainder of the Complaint recites a prayer for judgment and relief for which no response is required.  To the extent any response is required, Mejuri denies that Yurman is entitled to any remedy or relief.

## DEMAND FOR JURY TRIAL

Mejuri does not object to a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

Wherefore, having answered Yurman's Complaint, Mejuri asserts the defenses set forth below.  By pleading these defenses, Mejuri does not agree or concede that it has the burden of production or persuasion on any of these defenses.

Mejuri does not presently know all facts concerning the conduct of Yurman and the nature of Yurman's claims sufficient to state all defenses at this time.  In addition to the defenses described below, Mejuri reserves the right to allege additional defenses and amend its Answer to Yurman's Complaint and its Counterclaims as information becomes known through the course of discovery or otherwise.

## FIRST AFFIRMATIVE DEFENSE
## (FAILURE TO STATE A CLAIM FOR RELIEF)

123.      Yurman's Complaint, and each purported claim for relief asserted therein, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
## (FUNCTIONALITY)

124.      Yurman's Complaint, and each purported claim for relief asserted therein, fails in whole or in part because the Alleged Trade Dress is functional and/or aesthetically functional.

### THIRD AFFIRMATIVE DEFENSE
### (NOT DISTINCTIVE)

125.     Yurman's Complaint, and each purported claim for relief asserted therein, fails in whole or in part because the Alleged Trade Dress has no acquired distinctiveness, or secondary meaning.

### FOURTH AFFIRMATIVE DEFENSE
### (GENERICNESS)

126.     Yurman's Complaint, and each purported claim for relief asserted therein, fails in whole or in part because the Alleged Trade Dress is generic.

### FIFTH AFFIRMATIVE DEFENSE
### (FAIR USE)

127.     Yurman's Complaint, and each purported claim for relief asserted therein, fails in whole or in part because Mejuri's conduct constitutes fair use, including descriptive fair use.

### SIXTH AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT)

128.     Yurman's Complaint, and each purported claim for relief asserted therein, fails in whole or in part because Yurman cannot demonstrate any likelihood that consumers will be confused or misled as to the origin or source of Mejuri's goods or that Mejuri's goods are affiliated, connected, or associated with, or sponsored, endorsed, or approved by Yurman.

### SEVENTH AFFIRMATIVE DEFENSE
### (NO INJURY TO BUSINESS REPUTATION OR STATE TRADEMARK DILUTION UNDER GBL § 360-l)

129.     Yurman's Complaint, and each purported claim for relief asserted therein, fails in whole or in part because Mejuri has not used Yurman's Alleged Trade Dress in a manner that has caused injury to Yurman's business reputation or dilution of Yurman's Alleged Trade Dress.

## EIGHTH AFFIRMATIVE DEFENSE
## (PLAINTIFFS HAVE NOT SUFFERED DAMAGES)

130.     Yurman's Complaint, and each purported claim for relief asserted therein, fails in whole or in part because Yurman has not suffered any injury or damage that is the result or proximate result of any act, affirmative or otherwise, committed by Mejuri.

## NINTH AFFIRMATIVE DEFENSE
## (DAMAGES ARE SPECULATIVE IN NATURE)

131.     Yurman's Complaint, and each purported claim for relief asserted therein, fails in whole or in part because Yurman is seeking to recover damages that are speculative in nature.

## TENTH AFFIRMATIVE DEFENSE
## (NO INJUNCTIVE RELIEF)

132.     Yurman's Complaint, and each purported claim for relief asserted therein, fails in whole or in part because Yurman cannot show that it will suffer irreparable harm and because Yurman has an adequate remedy at law for any actionable claim and is not entitled to injunctive relief with respect to Mejuri's alleged conduct.

## ELEVENTH AFFIRMATIVE DEFENSE
## (NO WILLFULNESS)

133.     Mejuri's conduct was innocent, and not willful or intentional.

## TWELFTH AFFIRMATIVE DEFENSE
## (NOT AN EXCEPTIONAL CASE)

134.     This is not an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## THIRTEENTH AFFIRMATIVE DEFENSE
## (NO DESTRUCTION OF INFRINGING ARTICLES)

135.     Mejuri has not infringed any of Yurman's Alleged Trade Dress and thus the destruction of infringing articles under 15 U.S.C. § 1118 is unwarranted.

## FOURTEENTH AFFIRMATIVE DEFENSE
## (RESERVATION OF ADDITIONAL DEFENSES)

136.     Mejuri reserves the right to assert any and all additional defenses based on information learned or obtained during discovery.


Dated: March 4, 2022                                        Respectfully submitted,


                                                           */s/ Christopher R. Noyes*
                                                           Christopher R. Noyes
                                                           P. Samuel Callaghan (*pro hac vice* forthcoming)
                                                           WILMER CUTLER PICKERING
                                                              HALE AND DORR LLP
                                                           7 World Trade Center
                                                           250 Greenwich Street
                                                           New York, NY 10007
                                                           Tel: (212) 230-8800
                                                           Fax: (212) 230-8888

                                                           Vinita Ferrera (*pro hac vice* forthcoming)
                                                           WILMER CUTLER PICKERING
                                                              HALE AND DORR LLP
                                                           60 State Street
                                                           Boston, MA 02109
                                                           Tel: (617) 526-6000
                                                           Fax: (617) 526-5000

                                                           *Counsel for Mejuri Inc. and Mejuri (US), Inc.*